*Attorney Grievance Commission v. Nicholas G. Karambelas*, Misc. Docket AG No. 37, September Term, 2019.  Opinion by Barbera, C.J.

**ATTORNEY MISCONDUCT — DISCIPLINE — DISBARMENT**

Respondent, Nicholas G. Karambelas, violated Maryland's Rules of Professional Conduct 1.1, 1.4, 1.15, 3.3, and 8.4.  Additionally, Respondent violated D.C. Rule of Professional Conduct 1.15, and Section 10-306 of the Maryland Business Occupations and Professions Article.  These violations principally arose from Respondent's intentionally dishonest conduct involving the misappropriation of estate funds and various misrepresentations to the Orphan's Court as well as to his clients.  In conjunction with several aggravating factors, these violations warrant disbarment as the appropriate sanction for Respondent's misconduct.

Circuit Court for Montgomery County
Case No. 472858V
Argued: October 5, 2020

IN THE COURT OF APPEALS
OF MARYLAND

Misc. Docket AG No. 37

September Term, 2019

———————————————————

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

NICHOLAS G. KARAMBELAS

———————————————————

Barbera, C.J.,
McDonald
Watts
Hotten
Getty
Booth
Biran,

JJ.

———————————————————

Opinion by Barbera, C.J.

———————————————————

Filed: April 1, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

On September 27, 2019, the Attorney Grievance Commission of Maryland ("Petitioner"), acting through Bar Counsel, filed in this Court a Petition for Disciplinary or Remedial Action (the "Petition") against Respondent, Nicholas G. Karambelas. The Petition was precipitated by a complaint filed against him by Adam Brandon, a beneficiary of the estate of Ida Moss, Respondent's former client. The Petition alleges violations under both the Maryland Rules of Professional Conduct ("MRPC") and the Maryland Lawyers' Rules of Professional Conduct ("MLRPC").[1] The alleged Rules violations include: 1.1 (Competence), 1.4(a) and (b) (Communication), 1.15(a) and (d) (Safekeeping Property), 3.3(a) (Candor Toward the Tribunal), 5.5(a) (Unauthorized Practice of Law), and 8.4(a)–(d) (Misconduct). Petitioner also alleges a violation of the District of Columbia's Rules of Professional Conduct ("D.C. Rule"), specifically D.C. Rule 1.15(a) and (c) (Safekeeping Property), in effect through January 31, 2007 and as amended effective February 1, 2007.[2] Petitioner further alleges that Respondent violated Section 10-306 of the Business Occupations and Professions Article (Misuse of trust money) of the Maryland Code.

---

[1] Effective July 1, 2005, the Maryland Rules of Professional Conduct were renamed the Maryland Lawyers' Rules of Professional Conduct. Petitioner invoked both versions because Respondent's conduct occurred both before and after the renaming of the Rules of Professional Conduct. However, there is no substantive difference between the two. As such, we refer to all charged violations, including those that are alleged to have occurred prior to the renaming, by the form used in the MLRPC.

[2] While Respondent's conduct occurred during both versions of D.C. Rule 1.15, there is no substantive difference between the two. Therefore, we shall employ in this opinion Rule 1.15 effective February 1, 2007.

1

This Court designated the Honorable Margaret M. Schweitzer of the Circuit Court for Montgomery County to serve as the hearing judge. The hearing was conducted on February 24, 2020. By an email memorandum dated February 20, 2020, Respondent informed Petitioner and the hearing judge that he could not "participate in the hearing in a meaningful way" due to his health but was not seeking "to adjourn the hearing." On February 21, 2020, the court conducted a conference call on the record with Petitioner and Respondent to clarify the contents of the emailed memorandum. Respondent confirmed that he did not seek a continuance of the hearing but did wish to make a written submission. On Sunday, February 23, 2020, Respondent emailed to the court and Petitioner a Settlement Agreement from a civil matter tangentially related to the instant matter.

At the commencement of the February 24, 2020 hearing, the hearing judge contacted Respondent via telephone. Respondent sought to have two documents admitted at the hearing: The Settlement Agreement,[3] emailed on February 23, 2020, and Section I, "Factual Clarifications" of his Response to the Petition, initially filed on November 21, 2019. With the agreement of Petitioner, the hearing judge allowed Respondent to adopt the "Factual Clarifications" as if submitted by affidavit and enter into evidence the Settlement Agreement (after confidentiality was waived). These two documents comprise the entirety of Respondent's case. Respondent did not otherwise participate in the proceedings.

---

[3] As discussed further below, the Settlement Agreement admitted at the evidentiary hearing stems from the settlement of a malpractice claim brought by the intended beneficiaries of Respondent's client's estate.

At the hearing, the judge heard testimony from two witnesses: (1) Dennis Katz, the grandson of Respondent's client, Ida Moss; and (2) Alton Burton, an attorney and certified public accountant initially hired to handle the administration of the estate of Patricia Brandon, daughter of Ida Moss and another of Respondent's clients. The hearing judge issued written findings of fact and proposed conclusions of law, concluding that Respondent had violated many of the aforementioned provisions of Maryland's Rules of Professional Conduct, D.C. Rule 1.15, as well as Section 10-306 of the Maryland Business Occupations and Professions Article.

Petitioner filed no exceptions to the hearing judge's findings of fact and proposed conclusions of law; Respondent filed exceptions only to the mitigating factors. Respondent recommended a public reprimand as the appropriate sanction; Petitioner recommended disbarment.

On October 5, 2020, we heard oral argument, and on October 6, 2020, we issued a per curiam order disbarring Respondent. *Attorney Grievance Comm'n v. Karambelas*, 471 Md. 96 (2020). We explain in this opinion the reasons for that action.

## I.

### The Hearing Judge's Findings of Fact

We summarize below the hearing judge's findings of fact, which are supported by clear and convincing evidence.

*Background*

Respondent was admitted in 1980 to the Bars of New York and the District of Columbia. He was admitted to the Maryland Bar in 1999.[4] During the course of events at issue in this case, Respondent maintained a law office in Washington, D.C., practicing under the firm name of Sfikas & Karambelas, LLP.

*Representation of Ida Moss and the Ida Moss Estate*

In and about November 1996, the Respondent met and formed an attorney-client relationship with Maryland resident, Ida Moss.[5] At that time, Ms. Moss owned and resided at a residential real property located at 7409 Helmsdale Road in Bethesda, Maryland (the "Bethesda residence"). Ms. Moss's adult daughter, Patricia Brandon, resided at the

---

[4] In connection with the alleged violation of Rule 5.5 (unauthorized practice of law), the hearing judge declined to find a violation in the light of absence of evidence in the record that Respondent had performed legal work for Ms. Moss prior to his admission to the Maryland Bar. Bar Counsel does not take exception to the hearing judge's determination as to the Rule 5.5 charge and is not further pursuing that charge. However, Bar Counsel suggests that we take judicial notice of our own records, which reflect that Respondent was admitted to the Maryland Bar on August 19, 1999. *See* Md. Rule 5-201(b) (judicial notice may be taken of facts set forth in "sources whose accuracy cannot reasonably be questioned"). As Bar Counsel has suggested, we take notice of that date in the text solely for the accuracy of this opinion and not in connection with the charge that Bar Counsel is no longer pursuing.

We provide this guidance for the benefit of future attorney disciplinary proceedings: In the event that the date of a respondent's bar admission is a relevant fact in such a proceeding, Bar Counsel or the respondent should present the hearing judge with evidence of this Court's records of admission and suggest that the hearing judge take judicial notice of those records during the hearing.

[5] Unfortunately, the record is silent as to how the relationship between Respondent and Ida Moss started.

Bethesda residence with Ms. Moss. Adam Brandon, Ms. Moss's grandson and Ms. Brandon's adopted son (her biological nephew), lived at the Bethesda residence as well.

Ms. Moss also owned two commercial properties, one located in Wheaton, Maryland (the "Wheaton property") and another in Waldorf, Maryland (the "Waldorf property"). Tenants occupied both properties, both of which were managed for Ms. Moss by professional rental management companies.

*The 1995 Will*

Ms. Moss executed a Last Will and Testament in late 1995 (the "1995 Will"), before Respondent began acting as her attorney. The 1995 Will was prepared by Ms. Moss's then-attorney, Lawrence L. Bell. The 1995 Will included cross-references to an "Amended and Restated Ida Moss Trust Agreement" (the "1995 Trust Agreement"), a separate document also executed by Ms. Moss in late 1995. The 1995 Trust Agreement contained amended and restated provisions for the "Ida Moss Trust," a revocable *inter vivos* trust first established in 1987.

The 1995 Will contained instructions for the disposition of tangible personal property and directed that Ms. Moss's residuary estate be given to the then-serving Trustee of the Ida Moss Trust, "to be held, administered and ultimately distributed upon the terms and conditions and for the uses and purposes set [forth] in the [1995] Trust Agreement."

The 1995 Will also provided for Patricia Brandon and Lawrence L. Bell, "together or the survivor of them, to serve as Co-Personal Representatives or Personal Representatives, as the case may be," of Ms. Moss's estate. The 1995 Trust Agreement

5

named Ms. Moss as Trustee during her lifetime and designated Ms. Brandon and Mr. Bell as successor co-trustees or trustee, whatever the case, upon Ms. Moss's "incapacity, voluntary resignation or death."

In December 1996, Respondent met with Mr. Bell to discuss Ms. Moss's request that Respondent handle all her legal affairs. At or about that time, Mr. Bell transferred Ms. Moss's estate planning documents, including the 1995 Will, to Respondent. That transfer was confirmed in a letter by Mr. Bell to Respondent, dated December 20, 1996.

In March 1997, Ms. Moss executed a codicil (the "1997 codicil") to her 1995 Will, revoking the appointment of Mr. Bell as co-personal representative and personal representative. In his place, Ms. Moss appointed Respondent, providing him "with all rights, powers and duties set forth" in the 1995 Will. Respondent's signature appears on page two of the 1997 codicil. The hearing judge found that Respondent's signature confirmed his actual knowledge of the existence of Ms. Moss's 1995 Will and related 1995 Trust Agreement.

Ms. Moss died on December 17, 2002. From November 1996 and continuing until her death, Respondent acted as Ms. Moss's attorney for personal and business matters. The hearing judge found that following Ms. Moss's death, Respondent failed to act promptly to open an estate and to carry out Ms. Moss's testamentary wishes as provided in her 1995 Will and the 1995 Trust Agreement.

Per the 1995 Will, after payment of debts, taxes, expenses of estate administration, and the distribution of personal property, the entire residuary estate was to be distributed

6

to the Ida Moss Trust. The 1995 Trust Agreement stipulated that there was to be a distribution of $30,000 in cash from the trust to Dennis Katz, Ms. Moss's grandson. The remaining balance of the trust fund was to be equally divided between Ms. Brandon and Adam Brandon. The hearing judge found that Respondent failed to take any steps to disburse the funds as specified in the 1995 Trust Agreement.

*The Estate Petition, Opening of the Estate, and Respondent's Conduct Regarding the Estate*

On January 31, 2005, more than two years after Ms. Moss's death, Respondent filed with the Register of Wills for Montgomery County a Regular Estate Petition for Administration on behalf of Ms. Brandon and the estate. The petition sought the appointment of Ms. Brandon as personal representative of the Estate of Ida Moss. Respondent did not disclose to the Register of Wills his knowledge that a will existed, and he did not file either the original document or the copy provided to him by Mr. Bell in 1996. Rather, Respondent checked the box that Ms. Moss died intestate, notwithstanding his knowledge of the existence of her 1995 Will.

Respondent claimed in his Response to the Petition that he never saw the original will, and due to Ms. Moss's several changes to her will, he never saw the final will. The hearing judge found Respondent's claims unpersuasive, explaining that even if Respondent never saw the original or final will, he was aware that the will existed because he signed the 1997 codicil to the 1995 Will. Moreover, despite Respondent's claims that such a will was never under his dominion or control, the hearing judge further found that Respondent likely knew the location of the will, or at least where a copy was located, but made no effort

7

to locate either the original or a copy. The hearing judge determined that Respondent, by proceeding as if Ms. Moss died intestate, clearly controverted the desires of his client and made a knowing misrepresentation to the Orphans' Court for Montgomery County (the "Orphans' Court").[6]

On January 31, 2005, the Register of Wills for Montgomery County opened the Estate of Ida Moss and issued an Administrative Probate Order appointing Ms. Brandon as personal representative. Respondent subsequently advised Ms. Brandon that it was necessary to sell the Wheaton property to pay estate taxes. Relying on that advice, and at Respondent's direction, Ms. Brandon sold the Wheaton property in March 2005 for $908,000. The net proceeds to be distributed to the Estate of Ida Moss totaled $852,305.50.

Respondent, however, did not make use of the Wheaton property sale proceeds to pay the estate taxes. In fact, following that sale, Respondent did not open an estate bank account or an account in the name of the Ida Moss Trust to receive the net proceeds ($852,305.50) of the sale. Instead, Respondent advised Ms. Brandon to place the funds in his attorney trust account, which, evidently, she permitted at Respondent's direction. Respondent subsequently provided instructions to the settlement agent to wire the net proceeds of the sale ($852,305.50) to his trust account at Wachovia Bank. Respondent maintained the Wachovia account as an IOLTA account in the District of Columbia.

---

[6] In Montgomery County, the circuit court judges serve in the capacity of the Orphans' Court rather than an elected panel of judges.

8

*Respondent's Acts of Misappropriation*

Once the net proceeds of the sale of the Wheaton property were deposited in his IOLTA account, Respondent began an extended course of misappropriation of the funds. Respondent made the following transfers from his trust account to a personal bank account: March 21, 2005, a transfer of $8,000; March 29, 2005, a transfer of $10,000; April 4, 2005, a transfer of $13,000; and April 25, 2005, a transfer of $6,000. In addition to those transfers, Respondent often withdrew cash and wrote several checks drawn from his trust account to pay his personal expenses, as well as those of his daughters. Respondent utilized the estate's money to pay for things such as his daughters' private school tuition, his personal credit card bill payments, professional liability insurance policy payments, and generous donations to charities in his name.

Respondent maintained no client matter ledger or record to keep track of those funds entrusted to him as a fiduciary for the estate. From March 18, 2005 to August 20, 2007, the balance of Respondent's trust account fluctuated from deposits and disbursements made for other clients. On August 25, 2007, Respondent made another transfer, this time for $25,000 from the trust account to his personal account. Following that transfer, the remaining balance in Respondent's trust account was $1,596.04.

While misappropriating the proceeds from the sale of the Wheaton property, Respondent occasionally issued "income" checks to Ms. Brandon between March 2005 and May 2007. Those checks, drawn from the trust account, ranged in amount from $5,000 to $6,500. There was no obvious basis or schedule for those payments. Respondent claims

to have made occasional cash disbursements to Ms. Brandon as well, but he provided no records to substantiate that claim.

*Actions Taken by the Orphans' Court*

In February 2006, the Orphans' Court entered an Order to Show Cause why Ms. Brandon should not be removed as personal representative for failure to file a timely first account and inventory for the Estate of Ida Moss. Respondent failed to appear at the show cause hearing on April 19, 2006, resulting in Ms. Brandon being temporarily removed as personal representative.

On May 19, 2006, Respondent filed a motion to vacate the April 19, 2006 order, stating that "undersigned counsel has agreed to take an active personal role in the affairs of the Estate and to close the Estate as required by law." The hearing judge found this statement misleading given that Respondent had been legally responsible for the "affairs of the Estate" since Ida Moss's death.

On May 23, 2006, Respondent filed with the Register of Wills an Information Report and Inventory for the Moss Estate. In the Inventory, he stated the real property estate assets as: (1) the Waldorf property, valued at $880,000; (2) the Wheaton property, valued at $700,000 (though, no longer part of the estate having been sold); and (3) the Bethesda residence valued at $475,000. However, Respondent did not identify any tangible personal property, financial accounts, or cash assets belonging to the Estate of Ida Moss at that time.

Following a hearing held before the Orphans' Court on July 19, 2006, the court reinstated Ms. Brandon as personal representative and directed that a First and Final Accounting be filed by August 15, 2006. On August 15, 2006, Respondent filed an Amended Inventory and the First and Final Account. The Amended Inventory included revisions indicating that the Wheaton property sold for $903,000 and that the estate had cash in that amount from the sale proceeds.

The First and Final Account that Respondent prepared and filed listed the following assets available for distribution: $1,622,460 in real property based on the valuation of the Waldorf property and the Bethesda residence, and $903,000 in cash proceeds from the Wheaton property sale. Respondent identified Ms. Brandon as "daughter and sole beneficiary EXEMPT," attempting to suggest she was exempt from any obligation for inheritance tax. The hearing judge found that Respondent's classification of Ms. Brandon as the sole beneficiary was a misstatement. Under the 1995 Will, Ms. Brandon was entitled to only half of the trust fund remainder, with the other half going to Adam Brandon. Even if Ms. Moss had died intestate, Ms. Brandon was not the only prospective heir, so she was not the "sole beneficiary."

The hearing judge determined from these facts that Respondent knowingly and intentionally failed to provide true and accurate information about the assets of the Ida Moss Estate, any changes in the assets, and the disbursements made when he filed the First and Final Account. Namely, Respondent failed to note his receipt of the funds from the sale of the Wheaton property as well as his misappropriation of those funds.

11

On February 15, 2007, the Orphans' Court issued another Order to Show Cause why Ms. Brandon should not be removed as personal representative, this time for failure to perfect the First and Final Account. On April 3, 2007, Respondent filed a "Status Report on February 15, 2007 Order." This led the Auditor for the Register of Wills to file a "Request for Rescinding Order of April 5, 2007," which in turn caused the Orphans' Court to issue an "Order Rescinding Order to Show Cause Why Personal Representative Should Not Be Removed on April 6, 2007." Upon approval by the Auditor for the Register of Wills, the Orphans' Court approved the First and Final Account in the Ida Moss Estate on June 6, 2007. No exceptions were filed, and the order became final twenty days after its entry.

The hearing judge noted other concerns regarding Respondent's final accounting. As mentioned earlier, the Wheaton and Waldorf properties were both commercial real estate that Ms. Moss had leased to commercial tenants. Respondent, however, never provided to the Orphans' Court any accounting of rental income received after Ida Moss's death from the Wheaton property (before its sale) or the Waldorf property. Respondent also failed to account for any disbursement of estate funds to pay expenses associated with any of the properties. Moreover, the hearing judge noted that Respondent did not disclose his misappropriation of estate funds, and he never petitioned for the approval of any attorney's fees for himself.

*Representation of Patricia Brandon*

Ms. Brandon relied on Respondent's advice and counsel, both before and after her mother's death. Respondent advised Ms. Brandon regarding the management of the Wheaton and Waldorf commercial rental properties, as well as the family's financial affairs more generally. Respondent also drafted Ms. Brandon's will. The hearing judge noted that sometime after having depleted the Wheaton property sale proceeds, Respondent knowingly misrepresented to Ms. Brandon that the proceeds had been lost in the 2008 stock market crash.

In early 2011, Ms. Brandon began to suffer from various health issues, at which time her nephew, Dennis Katz, traveled from his home in Florida to Maryland to assist her with financial matters. Soon thereafter, Dennis Katz and Adam Brandon[7] found paperwork for the 2005 sale of the Wheaton property, evidence that Respondent deposited the sale proceeds in his trust account, and a copy of Ms. Brandon's will[8] with a provision naming Respondent as successor beneficiary of her estate. Dennis Katz and Adam Brandon also discovered a copy of Ms. Moss's 1995 Will at the Bethesda residence.

---

[7] Dennis Katz and Adam Brandon are half-brothers through their mother, Sherry Moss. Sherry Moss is one of Ida Moss's two daughters, the other being Ms. Brandon. Sherry Moss predeceased Ida Moss and Ms. Brandon, prompting Ms. Brandon and her husband to adopt Adam Brandon in 1981.

[8] Mr. Katz testified at the evidentiary hearing that Respondent had written a will for his aunt, Ms. Brandon, and "named himself as the beneficiary of her entire Will if Adam happened to pass away prior to my Aunt."

Dennis Katz then visited the Waldorf property and discovered that Respondent, with the power of attorney granted to him by Ms. Brandon, was trying to sell the Waldorf property. Ms. Brandon was unaware of the attempted sale and subsequently executed a new power of attorney in favor of Dennis Katz, who was able to prevent the sale of the Waldorf property.

*Civil Suit Against Mr. Karambelas*

In May 2011, due to their concerns regarding Respondent's actions, Mr. Katz and Adam Brandon sought the advice of three other attorneys, Alton Burton, Robert Bunn, and Christopher Hoge. Mr. Hoge was engaged to handle a civil lawsuit against Respondent, Mr. Bunn took over as the family's estate attorney, and Mr. Burton examined the estate's tax liability due to its neglect under Respondent's care.

Ms. Brandon died in June of 2011, and in October of that year Adam Brandon and Dennis Katz instituted a civil suit against Respondent and his firm, Sfikas & Karambelas, LLP. The suit sought $1.5 million in compensatory damages and $1 million in punitive damages. The complaint alleged legal malpractice, breach of fiduciary duty, and wrongful conversion.

During discovery, Respondent provided Mr. Hoge with copies of checks from Respondent's trust account that were issued during the relevant period from 2005 to 2007. Mr. Burton reviewed the records to account for the Wheaton property sale proceeds. His analysis broke down the $852,305.50 in sale proceeds as follows: $218,261.97 was attributed to payments for the benefit of Ms. Brandon; $44,771.71 was attributed to

14

payments for the benefit of Adam Brandon; $12,281.00 was attributed to payments for the benefit of Moss Enterprises (an entity used to collect funds and pay bills relating to the Waldorf property); and $576,990.82 was attributable to the misappropriation by Respondent.

The suit further alleged that Respondent failed to properly advise Ms. Brandon about having to pay nearly $670,000 in federal and Maryland estate taxes within nine months of Ida Moss's death. Due to that failure, there were inchoate tax liens filed against the Waldorf property and the Bethesda residence. Moreover, considerable interest and penalties were assessed for the failure to pay the estate taxes when due in 2003. Ultimately, the Bethesda residence had to be sold in March 2012 to preserve the equity in the home because the bank was going to foreclose on the property. The equity was then used to help pay the outstanding estate tax liabilities, as well as the costs of the civil suit. The sale forced Adam Brandon out of the family residence and into a back room of a store situated on the Waldorf property, which he converted into a one-room apartment.

The suit also asserted that Respondent failed to advise Ms. Brandon about the necessity of filing federal and Maryland income tax returns on behalf of the Ida Moss Estate. This too led to substantial tax indebtedness, requiring the Ida Moss Estate to be reopened in 2013. The Orphans' Court ordered the estate to be reopened but refused to admit Ida Moss's 1995 Will due to the statute of limitations. Thus, the estate had to be administered as an intestate estate, causing additional family members not named in the 1995 Will to become beneficiaries. This led to further litigation that slowed the

15

administration of the estate, added expense to the administration of the estate, and reduced the inheritance of all beneficiaries.

Respondent argued that as the estate attorney, he was not responsible for handling any tax consequences relating to the administration of the estate. He further claimed that he encouraged Ms. Brandon to seek outside counsel for handling the estate's taxes; evidently, he took no other steps.

Mr. Burton, familiar with the process of estate taxation, testified at the evidentiary hearing that addressing estate taxation is a component of an estate attorney's responsibilities. He also testified that a competent estate attorney, at a minimum, would find a suitable tax attorney or accountant to manage the estate's taxes if the estate attorney was unable to do it himself. Respondent failed to act accordingly.

The hearing judge ultimately found that Respondent's fraudulent misappropriation of estate funds and lack of competence in administering the estate caused substantial financial detriment to the Ida Moss Estate and her intended beneficiaries. Furthermore, Respondent's misconduct required additional proceedings relating to the handling of the Ida Moss Estate since its reopening and the extensive efforts made in resolving the estate's tax issues.

The civil suit was dismissed in December 2012 when the parties entered into a Settlement Agreement. The parties settled the matter on December 6, 2013 for $850,000, not including interest, to be paid in full by July 1, 2018. The Settlement Agreement provided that Respondent's malpractice carrier pay $500,000 to the beneficiaries of the

16

Estate of Ida Moss, and Respondent pay the remaining $350,000 pursuant to a payment plan. Respondent complied with the payment plan and made the final payment on December 21, 2015.

The hearing judge, however, determined that the settlement was not full restitution, stating it was clear that the $500,000 paid by the malpractice carrier was meant to compensate the plaintiffs for Respondent's mishandling of the estate; whereas, the $350,000 was a settlement of the monies that Respondent misappropriated. Thus, the hearing judge did not find that the settlement amount fully compensated the Estate of Ida Moss for the misappropriated monies of over $576,990.82. Furthermore, the hearing judge determined that the hearing testimony showed that the plaintiffs incurred significant litigation costs in bringing suit, which further contributed to their losses due to Respondent's actions.

## II.

## The Hearing Judge's Conclusions of Law

The hearing judge determined that Respondent violated Rules 1.1, 1.4(a) and (b), 1.15(a) and (d), 3.3(a), and 8.4(a)–(d). Additionally, Respondent violated D.C. Rule of Professional Conduct 1.15(a) and (c). The hearing judge lastly determined that Respondent violated Section 10-306 of the Maryland Business Occupations and Professions Article.

Neither Respondent nor Petitioner filed exceptions to the hearing judge's findings of fact and conclusions of law. Respondent filed exceptions, though, relating to mitigating factors.

17

## III.

### Standard of Review

> This Court has 'original and complete jurisdiction' in attorney disciplinary proceedings and 'conducts an independent review of the record.' The hearing judge's findings of fact are left undisturbed unless those findings are clearly erroneous or either party excepts to them. . . . We review the hearing judge's conclusions of law without deference.

*Attorney Grievance Comm'n v. Edwards*, 462 Md. 642, 682–83 (2019) (citations omitted).

As is the case here, where no exceptions to the findings of fact are filed, "the Court may treat the findings of fact as established." Md. Rule 19-741(b)(2)(A).

## IV.

### Discussion

We turn now to the hearing judge's conclusions of law. For reasons explained below, we agree with the hearing judge that Respondent violated the following Rules of Professional Conduct, as well as D.C. Rule of Professional Conduct 1.15 (safekeeping of property), and Section 10-306 (Misuse of trust money) of the Maryland Business Occupations and Professions Article.

### *Rule 1.1 Competence*

Rule 1.1 provides that "[a] lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

We have held that a "failure to apply the requisite thoroughness and/or preparation in representing a client is sufficient alone to support a violation of Rule 1.1." *Attorney*

18

*Grievance Comm'n v. Guida*, 391 Md. 33, 54 (2006). Furthermore, Rule 1.1 is violated when "an attorney fails to act or acts in an untimely manner, resulting in harm to his or her client." *Attorney Grievance Comm'n v. Garrett*, 427 Md. 209, 222–23 (2012) (quoting *Attorney Grievance Comm'n v. Brown*, 426 Md. 298, 319 (2012)) (holding that not taking necessary, fundamental steps to further a client's cause results in violation of Rule 1.1); *see also Attorney Grievance Comm'n v. De La Paz*, 418 Md. 534, 553–54 (2011) (finding that failure to appear at a hearing violated Rule 1.1).

The record is clear that Respondent violated Rule 1.1 by not rendering competent representation in the administration of the Ida Moss Estate. First, he failed to take the necessary steps to promptly open the Ida Moss Estate after her death in 2002. Instead, he waited over two years to file a Regular Estate Petition for Administration with the Register of Wills. Then, upon the delayed opening of the estate, Respondent failed to provide either a copy or an original of Ms. Moss's 1995 Will, or even share his knowledge that a will existed. Rather, he misstated that Ms. Moss died intestate. That act clearly impeded his client's, Ms. Moss's, testamentary wishes and harmed not just the estate, but the intended beneficiaries as well.

Respondent attempts to explain that he never saw an original or final will because Ms. Moss, and later Ms. Brandon, maintained all documents. Respondent's explanation does not justify why he incorrectly stated that Ms. Moss died intestate. Regardless of his never seeing the original will, he had to know of its existence because Ida Moss's former attorney transferred Ms. Moss's estate planning documents to Respondent. Furthermore,

Respondent signed the 1997 codicil appointing him as co-personal representative and providing him "with all rights, powers and duties set forth" in the 1995 Will, establishing his knowledge of the will's existence. Moreover, he knew whom he could ask to locate it (i.e. his own client, Ms. Brandon) given Respondent's own admission that all documents regarding the 1995 Will were kept by Ms. Moss and Ms. Brandon at the Bethesda residence, where all their meetings took place.

Respondent continued to violate Rule 1.1 by failing to properly advise Ms. Brandon on the proper administration of the Ida Moss Estate. Specifically, he failed to inform her of the need to pay state and federal estate taxes within nine months of her mother's death. Nor did he inform her of the need to file estate tax returns. We find these facts particularly troubling, given that Respondent took it upon himself to direct Ms. Brandon to sell the Wheaton property so that the proceeds could be put towards estate taxes (as discussed later, these proceeds were never able to be attributed towards estate taxes due to Respondent's misappropriation).[9]

Respondent claims he was not tax counsel for Ms. Brandon and should not be at fault for the estate's tax troubles. However, Mr. Burton, attorney and certified public accountant, testified at the evidentiary hearing that ensuring that both estate taxes and tax

---

[9] Respondent makes a blanket statement in his Response to the Petition that he did not mislead Ms. Brandon in advising her to sell the Wheaton property, but that is hard to believe given the facts before us. Respondent advised the sale on the premise that the proceeds should be put towards estate taxes. However, Respondent, now claiming he was not tax counsel, had those proceeds placed in his trust account and later misappropriated those same funds. The alignment of these acts indicates Respondent was in fact misleading Ms. Brandon, using the ruse of estate taxes to gain access to funds.

returns are filed is something a reasonably competent estate attorney would do. Even if Respondent was not competent to handle the tax issues himself, the fact that he advised Ms. Brandon to sell the Wheaton property to pay for estate taxes and counseled her in that sale shows, at a minimum, that he had an obligation to confirm the tax issues were being handled and not disregarded. Respondent's failure to competently advise Ms. Brandon ultimately led to substantial tax liability issues for the estate, the process of resolving those issues being "lengthy and grueling." In fact, the estate's tax issues were not resolved until approximately 2016.

Respondent also failed to advise Ms. Brandon of the requirement to file a timely First Account and Inventory in the estate of Ida Moss. Furthermore, Respondent, without explanation, failed to appear at the show cause hearing on April 19, 2006 causing Ms. Brandon to be temporarily removed as personal representative.

Respondent's failure to provide competent representation continued when he included various misstatements and omissions in documents he filed with the Register of Wills. First, in filing the Information Report and Inventory for the estate, Respondent failed to include material information such as tangible personal property, financial accounts, or cash assets of the estate. Second, he wrongfully stated that Ms. Brandon was the sole beneficiary of the estate in the First and Final Account. Third, he failed to note changes of estate assets and disbursements made from those assets in the First and Final Account, including his receipt of the Wheaton property sale proceeds and his misappropriation of those funds. And fourth, he did not provide an accounting of any rental

21

income from the Waldorf and Wheaton properties or note any disbursements of estate funds to pay expenses of those properties.

These facts show by clear and convincing evidence that Respondent failed to provide competent representation under Rule 1.1 as the attorney for the Ida Moss Estate and as counsel to Ms. Brandon.

*Rule 1.4(a) and (b) Communication*

Rule 1.4 provides:

> (a) A lawyer shall:
>     (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(f), is required by these Rules;
>     (2) keep the client reasonably informed about the status of the matter;
>     (3) promptly comply with reasonable requests for information; . . .
> (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

This Court has determined that Rule 1.4 is violated when an attorney communicates nothing or fails to communicate crucial information to the client regarding the status of a case. *See Garrett*, 427 Md. at 224; *see also De La Paz*, 418 Md. at 554.

Respondent violated Rule 1.4. As discussed under our Rule 1.1 analysis, Respondent failed to advise Ms. Brandon how to correctly and legally administer her mother's estate as the personal representative. That failure also left Ms. Brandon without the ability to make informed decisions regarding Respondent's role in his representation of the estate. More specifically, Respondent failed to properly communicate the need to pay state and federal estate taxes, file state and federal estate tax returns, file a First Account and Inventory of the estate's assets, as well as perfect the First and Final Account.

22

Moreover, as mentioned earlier, Respondent did not fully relay to Ms. Brandon his reasoning for advising the sale of the Wheaton property. After the sale, he failed to inform Ms. Brandon of any accounting or record of the Wheaton property sale proceeds entrusted to him as a fiduciary or inform her of any schedule of disbursements. And when Ms. Brandon did inquire as to the proceeds, Respondent misinformed her that the remaining proceeds had been lost in the 2008 stock market crash.

Unfortunately, Respondent's failure to keep Ms. Brandon reasonably informed continued into 2011, when it came to light that he was attempting to sell the Waldorf property without Ms. Brandon's knowledge or consent. Such conduct is a clear Rule 1.4 violation given that Respondent failed to communicate with Ms. Brandon regarding the matter of the sale *at all*. *See De La Paz*, 418 Md. at 554.

*Rule 1.15(a) and (d) Safekeeping Property*

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account . . . . Complete records of the account funds and of other property shall be kept by the lawyer and shall be preserved for a period of at least five years after the date the record was created.

. . . .

(d) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall deliver promptly to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall render promptly a full accounting regarding such property.

23

Respondent violated Rule 1.15. His violations stem from the sale of the Wheaton property and his failure to safeguard those funds for the Ida Moss Estate and the estate's intended beneficiaries.

Under the facts of this case, Respondent violated Rule 1.15(a) when he placed the Wheaton property sale proceeds into his trust account rather than in an estate bank account or an account in the name of the trust. *See Attorney Grievance Comm'n v. Boehm*, 293 Md. 476, 479 n.2 (1982) ("It is the obligation of an attorney upon receiving funds representing the assets of an estate to deposit those funds in a separate estate account clearly identifiable by the name of the decedent. Such funds should not be commingled in an escrow account, general or otherwise."). He then proceeded to make multiple transfers of thousands of dollars from his trust account to his personal bank account without the knowledge or authorization of Ms. Brandon. Respondent also wrote checks and withdrew cash from the trust account on several occasions to pay for his own personal expenses as well as those of his daughters. At the evidentiary hearing, Mr. Burton testified that Respondent's misappropriation[10] amounted to roughly $576,990.82. Such conduct is a clear violation of Rule 1.15(a) because funds belonging to the estate were placed into Respondent's personal bank account. *See Attorney Grievance Comm'n v. Owrutsky*, 322 Md. 334, 344 (1991) (stating that estate funds belong to the estate, not the attorney, and the

---

[10] We have defined misappropriation as "any unauthorized use by an attorney of a client's funds entrusted to him or her, whether or not temporary or for personal gain or benefit." *Attorney Grievance Comm'n v. Jones*, 428 Md. 457, 468 (2012) (quoting *Attorney Grievance Comm'n v. Glenn*, 341 Md. 448, 484 (1996)).

24

attorney has no right to those funds unless approval is given by the Orphans' Court). As this Court opined in *Owrutsky*, a fiduciary "[a]ppropriating any part of [another's] funds to their own use and benefit without clear authority to do so cannot be tolerated." 322 Md. at 345.

Respondent also violated Rule 1.15(a) by failing to keep a record of the Wheaton sale proceeds, entrusted to him as a fiduciary. *See Attorney Grievance Comm'n v. Ross*, 428 Md. 50, 78–79 (2012) (concluding there was a Rule 1.15(a) violation by an attorney who failed to maintain proper trust account records). Respondent intermingled the Wheaton property sale proceeds with other clients' funds in his trust account and maintained no client matter ledger to keep track of those funds.

Respondent violated Rule 1.15(d) when he failed to make the specified distributions expressed in the 1995 Trust Agreement. Specifically, Respondent did not notify Dennis Katz, an intended beneficiary, of his receipt of the estate funds and that Mr. Katz was entitled to a $30,000 disbursement under the 1995 Trust Agreement. Additionally, the remaining balance of the trust fund was to be divided equally between Ms. Brandon and her son, Adam Brandon. They also did not receive their distributions as specified in the 1995 Trust Agreement.

In sum, Respondent's gross misappropriation of over a half-million dollars of estate funds, as well as his total failure to safeguard those funds for the estate and its intended beneficiaries amounts to an egregious violation of Rule 1.15.

Rule 3.3(a) provides,

> (a) A lawyer shall not knowingly:
> > (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer[.]

The facts found by the hearing judge undoubtedly show that Respondent was knowingly dishonest with the Orphans' Court on multiple occasions. Respondent made his first knowingly false statement when he stated that Ms. Moss died intestate, thereby indicating she had no will. As previously discussed, Respondent had knowledge that a will existed given that Ms. Moss's former attorney transferred the estate planning documents to Respondent, and Respondent signed the 1997 will codicil. In accordance with that misrepresentation, Respondent withheld the 1995 Will from the Register of Wills.

Respondent continued to violate Rule 3.3 when he intentionally withheld information regarding all of the estate's assets in the Information Report and Inventory he filed with the Register of Wills on May 23, 2006. Particularly, he failed to identify any tangible personal property, financial accounts, or cash assets belonging to the estate.

Respondent again intentionally provided inaccurate information when he filed the First and Final Account on August 15, 2006. He failed to note his receipt of the funds from the Wheaton property sale, his misappropriation of those funds, and any disbursements he made to Ms. Brandon. Respondent also incorrectly stated that Ms. Brandon was the sole beneficiary of the estate. Under the 1995 Will and Trust Agreement, Ms. Brandon was entitled to only half of the remainder of the trust fund. But even if Ida Moss had died

intestate, Ms. Brandon would not have been the sole beneficiary because she was not the only heir. These intentional misstatements and withholdings from the Orphans' Court are in clear violation of Rule 3.3(a)(1).

*Rule 5.5(a) Unauthorized Practice of Law*

Rule 5.5(a) provides that a lawyer must not practice law in a jurisdiction where it would violate that jurisdiction's regulation of the legal profession. The only evidence supporting this alleged Rule violation, as found by the hearing judge, is Respondent's statement that he was admitted to the Maryland Bar sometime in the mid-1990's. This is insufficient to support a charge of the unauthorized practice of law given that the alleged violations occurred from November 1996 onward. Thus, we will not disturb the hearing judge's conclusion that there was not clear and convincing evidence to establish a Rule 5.5 violation.[11]

*Rule 8.4(a)–(d) Misconduct*

Rule 8.4 provides:

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice[.]

---

[11] *See supra* note 4.

As discussed above, Respondent has violated various other Rules, thereby violating Rule 8.4(a). A Rule 8.4(b) violation occurs when an attorney willfully violates Section 10-306 of the Business Occupations and Professions Article, which constitutes a criminal misdemeanor. *Attorney Grievance Comm'n v. Hamilton*, 444 Md. 163, 193–96 (2015); Md. Code, Bus. Occ. & Prof. § 10-606(b). Consequently, Respondent's violation of the Business Occupations and Professions Article (discussed below) necessarily caused him to violate Rule 8.4(b).

We have held that an intentional misappropriation of client funds "is an act infected with deceit and dishonesty." *Attorney Grievance Comm'n v. Cherry-Mahoi*, 388 Md. 124, 161 (2005) (quoting *Attorney Grievance Comm'n v. James*, 385 Md. 637, 666 (2005)). Thus, it has been consistently determined that an attorney's intentional misappropriation of client funds violates Rule 8.4(c). *Id.* at 159. As shown in the facts found by the hearing judge, Respondent misappropriated roughly $576,990 of the Wheaton property sale proceeds, in clear violation of Rule 8.4(c).

Moreover, "[when] an attorney knowingly makes a false statement, he necessarily engages in conduct involving misrepresentation," in violation of Rule 8.4(c). *Attorney Grievance Comm'n v. Dore*, 433 Md. 685, 708 (2013). Respondent repeatedly made false and misleading statements, several of which were made to the Orphans' Court. An attorney who violates Rule 3.3 will often also violate Rule 8.4(c). *Attorney Grievance Comm'n v. Woolery*, 462 Md. 209, 250 (2018) (finding that the attorney violated Rule 8.4(c) by violating Rule 3.3(a) (making false statements to a tribunal)). As discussed in our Rule

3.3(a) analysis, Respondent withheld the existence of Ida Moss's 1995 Will and accompanying 1995 Trust Agreement when opening the estate. Instead, he misstated that Ms. Moss died intestate. Then, he knowingly gave false and incomplete information about the assets of Ms. Moss's estate, changes in those assets, and disbursements made when he filed both the Information Report and Inventory, as well as the First and Final Account with the Orphans' Court.

Respondent also lied to Ms. Brandon when he told her the remaining sale proceeds of the Wheaton property were lost in the 2008 stock market crash when, in reality, he had misappropriated those funds. Lastly, Respondent was deceitful in his attempt to sell the Waldorf property without Ms. Brandon's knowledge or consent. Through these various acts, Respondent has certainly violated Rule 8.4(c).

Rule 8.4(d) is violated when the attorney's "conduct impacts negatively the public's perception or efficacy of the courts or legal profession." *Attorney Grievance Comm'n v. Reno*, 436 Md. 504, 509 (2014) (quoting *Attorney Grievance Comm'n v. Rand*, 411 Md. 83, 96 (2009)). Such a violation can be found in lying to a client and failing to represent a client in a suitable manner. *Attorney Grievance Comm'n v. Reinhardt*, 391 Md. 209, 222 (2006). Furthermore, failure on the part of an attorney to show up to a scheduled court proceeding clearly interferes with the administration of justice in violation of Rule 8.4(d). *Hamilton*, 444 Md. at 196.

As mentioned previously, Respondent misrepresented the reason for the sale of the Wheaton property, knowingly misappropriated those funds entrusted to him as a fiduciary,

and then lied about the status of those funds to Ms. Brandon. Moreover, and as discussed under Rule 3.3, he intentionally made misrepresentations to the Orphans' Court regarding the Ida Moss Estate. As explained under our Rule 1.1 and 1.4 analyses, Respondent also failed to adequately represent the Moss estate and Ms. Brandon on numerous counts. Respondent waited over two years to open the Moss estate, whereupon he failed to bring forth the 1995 Will despite his knowledge of its existence. Respondent subsequently failed to advise Ms. Brandon of the need to pay estate taxes and file estate tax returns, as well as the need to file an account and inventory of the Moss estate. Respondent's failure to advise Ms. Brandon about the requirement to file an account and inventory of the Moss estate, as well as his failure to appear at the show cause hearing, led to Ms. Brandon's temporary removal as personal representative. Respondent also tried to sell the Waldorf property without speaking to his client, Ms. Brandon.

Respondent's conduct and misrepresentations led to harmful consequences for Ida Moss's family, the impact of which has been felt over the course of many years. Some of the harmful consequences, as noted by the facts found by the hearing judge, include: the sale of the family home to pay estate taxes, which forced Adam Brandon to move into a back room at one of the commercial properties and convert it into an apartment; the Moss estate having to be reopened and treated as an intestate estate, whereupon beneficiaries not specified in Ida Moss's will were able to receive parts of the estate—causing further litigation for the family; and vast estate tax issues, the resolution of which was not obtained until late 2016.

In sum, we find that Respondent's conduct negatively impacts the public's perception of the legal profession, and we agree with the hearing judge's assessment that Respondent's conduct is prejudicial to the administration of justice in violation of Rule 8.4(d).

*D.C. Rule 1.15(a) and (c) Safekeeping Property*

D.C. Rule 1.15(a) provides that an attorney must keep funds belonging to a client or third person in a separate trust account and avoid commingling those funds with the attorney's own property. Rule 1.15(a) also requires an attorney to maintain records of funds. A misappropriation of client funds entrusted to the attorney will constitute a violation of Rule 1.15(a). *In re Edwards*, 990 A.2d 501, 518–20 (D.C. 2010).

Rule 1.15(c) requires an attorney, upon receipt of funds belonging to a client or third person, to promptly notify the client or third person. The attorney must also deliver to the client or third person any funds the client or third person is entitled to receive. Rule 1.15(c) also mandates that, "upon request by the client or third person, [the attorney] shall promptly render a full accounting regarding such property."

Respondent is held responsible under D.C. Rule 1.15 because his attorney trust account, in which he placed the Wheaton property sale proceeds (i.e. estate funds), was maintained in D.C. We find by clear and convincing evidence that Respondent violated D.C. Rule 1.15 for the same reasons we held that he violated Maryland's Rule 1.15.

31

*Business Occupations & Professions Article Section 10-306 (Misuse of trust money)*

Section 10-306 prohibits a lawyer from using "trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer." Md. Code, Bus. Occ. & Prof. § 10-306. One who willfully violates Section 10-306 is guilty of a misdemeanor. *Id.* § 10-606(b). As such, a willful violation of Section 10-306 necessarily violates Rule 8.4(b) (prohibiting the commission of a criminal act that reflects adversely on the lawyer's trustworthiness). *See Hamilton*, 444 Md. at 194–95. For one's acts to be "willful," there need not be proof of specific criminal intent, but there must be at least proof of a general intent. *Id.* at 195 (quoting *Glenn*, 341 Md. at 482).

The plain language of Section 10-306 and the facts of this case support the hearing judge's conclusion that Respondent violated Section 10-306 when he intentionally misappropriated the sale proceeds of the Wheaton property.

**V.**

**Aggravating and Mitigating Factors**

We next address the presence of any aggravating or mitigating factors, as such an analysis is necessary in determining the proper sanction. *Attorney Grievance Comm'n v. Thomas*, 445 Md. 379, 397 (2015) (citation omitted). The Respondent bears the burden of proving any mitigating circumstances by a preponderance of the evidence. *Attorney Grievance Comm'n v. Joseph*, 422 Md. 670, 695 (2011). Bar Counsel must prove the existence of any aggravating factors by clear and convincing evidence. *Edwards*, 462 Md. at 708.

We consider the following mitigating factors when determining the appropriate sanction:

1. absence of a prior disciplinary record;
2. absence of a dishonest or selfish motive;
3. personal or emotional problems;
4. timely good faith efforts to make restitution or to rectify consequences of misconduct;
5. full and free disclosure to the disciplinary board or a cooperative attitude toward proceedings;
6. inexperience in the practice of law;
7. character or reputation;
8. physical disability;
9. mental disability or chemical dependency;
10. delay in disciplinary proceedings;
11. imposition of other penalties or sanctions;
12. remorse;
13. remoteness of prior offenses; and
14. unlikelihood of repetition of the misconduct.

*See Attorney Grievance Comm'n v. Sperling*, 459 Md. 194, 277–78 (2018) (citation omitted) (reformatted).

In his Response to the Petition, Respondent argued that the following mitigating factors applied: absence of prior disciplinary record, absence of dishonest or selfish motive, restitution, cooperation with bar counsel, remoteness, and unlikelihood of repetition of misconduct. The hearing judge found mitigation in that the Respondent has no prior disciplinary history. However, upon examining the evidence, the hearing judge determined that Respondent failed to prove any other mitigation by a preponderance of the evidence. Respondent argues that the hearing judge erred in that determination and filed exceptions to all four of the mitigating factors he advances: remoteness, restitution, no prior disciplinary action, and unlikelihood of repetition of the misconduct. Respondent did not

33

need to except to the factor of no prior disciplinary action because the hearing judge found that mitigating factor to exist. We will not disturb that finding. We now examine the remaining factors.

As previously noted, Respondent's case in chief at the evidentiary hearing consisted of only the Settlement Agreement and the "Factual Clarifications" section of his Response. We look to that evidence in making our determinations.

First, we agree with the hearing judge that Respondent has not provided evidence showing the absence of a dishonest or selfish motive. The evidence before us indicates, rather, that Respondent's conduct was dishonest and selfish. He misappropriated a substantial amount of client funds for personal expenses, demonstrating his selfish motive. Moreover, he hid his conduct from his clients and the Orphans' Court and lied about his actions, which undoubtedly constitutes dishonesty.

Respondent also points to the mitigating factor of restitution, arguing it was satisfied by the December 6, 2013 settlement for $850,000. We are not persuaded. To start, we consider the settlement amount to have been only partial restitution. Although the total settlement amount exceeded the roughly $576,990.82 that Respondent misappropriated, the $500,000 that the insurance company paid was solely attributed to Respondent's gross mishandling of the estate. The remaining $350,000 that Respondent paid was attributed to his theft of the Wheaton property sale proceeds. That sum does not equate to the total amount Respondent misappropriated.

34

Moreover, as the hearing judge correctly found, Respondent's partial restitution was neither timely nor in good faith. *See Attorney Grievance Comm'n v. Miller*, 467 Md. 176, 225 (2020) (noting how repayment characterized as a sanction or penalty was not made in good faith to remedy the attorney's misconduct). The hearing judge found that Respondent did not pay the $350,000 out of an altruistic need to rectify his misconduct, but rather because Respondent was sued following the discovery of his wrongdoing years later and entered into the Settlement Agreement to end that suit and avoid greater monetary liability. As we have previously stated, "reimbursement after inquiry . . . does not serve to mitigate [Respondent's] conduct." *Attorney Grievance Comm'n v. Whitehead*, 405 Md. 240, 265 (2008). Accordingly, we overrule Respondent's exception and find that this mitigating factor is absent.

We agree with the hearing judge that Respondent has not offered any evidence that he cooperated with Bar Counsel throughout the proceedings. While Respondent did call in at the beginning of the evidentiary hearing, he did not otherwise participate in the proceeding. Moreover, as previously mentioned, Respondent's case consisted of only his Factual Clarifications from his Response to the Petition and the Settlement Agreement. Thus, we cannot make that finding.

Respondent maintains that the factor of remoteness applies here. We disagree. Respondent contends that his misrepresentations to the Orphans' Court were made between 2006 and 2007, his misappropriation of funds occurred between 2006 and 2007, and the civil case settled in 2013. However, Respondent does not provide any case law to support

his interpretation of remoteness. Moreover, we find that he misunderstands this factor. This Court has indicated that the mitigating factor of remoteness speaks to prior disciplinary proceedings for past Rules violations, not remoteness of the underlying events. *Attorney Grievance Comm'n v. Sperling*, AG No. 6, slip op. at 57–58 (Md. Mar. 1, 2021) (rejecting the attorney's argument that "remoteness" refers to the lapse of time between the underlying misconduct and the filing of the Petition for Disciplinary and Remedial Action); *see also Sperling*, 459 Md. at 277–78 (listing mitigating factors, including "remoteness of prior violations of the MLRPC"); *Attorney Grievance Comm'n v. Shuler*, 443 Md. 494, 507 (2015) (describing "remoteness of prior violations of the MLRPC" as a mitigating factor).

The hearing judge astutely pointed out that if remoteness pertained to distance in time of underlying misdeeds, then the Court would essentially be rewarding attorneys for their ability to hide misconduct from the public and this Court. Such an interpretation would be counter to the core purpose of a disciplinary proceeding: to protect the public and prevent wrongdoing by attorneys. *Sperling*, 459 Md. at 274–75 (citation omitted) (explaining that the Court imposes sanctions to protect the public and to deter lawyers from violating the Rules). We will not interpret the factor of remoteness as Respondent wishes us to. The exception is overruled.

Lastly, Respondent asks that we find that he is unlikely to repeat his Rules violations. Respondent has provided no evidence that would prompt us to make that finding. Respondent merely states he has practiced law for forty years without being

36

subject to disciplinary action.  This is insufficient support, and in fact does not do Respondent any favors.  The fact that he has practiced for such an extended period of time and yet still committed the discussed misdeeds does not convince this Court that his experience will prevent further misconduct.

The aggravating factors we consider when determining the appropriate sanction include:

1. prior attorney discipline;
2. dishonest or selfish motive;
3. pattern of misconduct;
4. multiple Rules violations;
5. bad faith obstruction of the disciplinary proceeding by deliberately failing to comply with rules or orders;
6. submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
7. refusal to acknowledge the wrongful nature of conduct at issue;
8. the vulnerability of the victim;
9. substantial experience in the practice of law;
10. display of indifference to making restitution;
11. illegal conduct; and
12. likelihood of repetition of the misconduct.

*Sperling*, 459 Md. at 275 (citation omitted) (reformatted).

Petitioner has alleged the existence of evidence to support several of the above listed aggravating factors in Respondent's case.  The hearing judge found the following to exist by clear and convincing evidence: dishonest or selfish motive, pattern of misconduct, multiple Rules violations, refusal to acknowledge wrongfulness of conduct, substantial experience in the practice of law, and illegal conduct.  Based upon our independent review of the record, we agree that those aggravating factors are supported by clear and convincing evidence.

First, Respondent had a dishonest and selfish motive in acquiring and misappropriating estate funds entrusted to him while representing both the estate and Ms. Brandon. His selfish motive led him into further misconduct involving not only his own clients, but the Orphans' Court as well. Respondent's selfish motive is evidenced by his misuse of the estate funds, entrusted to him as a fiduciary, to pay for his own personal expenses.

Second, a pattern of misconduct is evidenced by Respondent's multiple instances of misappropriating estate funds, multiple misrepresentations to the Orphans' Court, misrepresentations made to Ms. Brandon in advising her as to the administration of the estate, and misrepresentations to Ms. Brandon as his individual client.

Third, as demonstrated in our analyses of the various Rules violations, Respondent engaged in multiple violations under our Rules of Professional Conduct, D.C. Rule 1.15, as well as the Maryland Business Occupations and Professions Article while representing Ida Moss, her estate, and Ms. Brandon.

Fourth, we find that Respondent has not fully acknowledged the wrongfulness of his conduct. Upon review of the evidence, Respondent neither admitted responsibility for his wrongdoing, nor acknowledged the long-lasting impact his behavior had on the Ida Moss Estate and Ms. Moss's family. Rather, in his Response, he defended some of his actions by stating he "did not serve as tax counsel" and was therefore, not responsible for the numerous and long-lasting tax issues the estate had to resolve. Moreover, Respondent seems to argue that his payment of the settlement was full restitution and made Ida Moss's

38

family whole again. However, as previously discussed, this is not the case. At most, the settlement was partial restitution of *some* of the money Respondent had misappropriated. And again, we do not find that repayment as a result of the lawsuit and opting for settlement to avoid greater monetary liability equates to taking full responsibility for one's transgressions.

Fifth, Respondent's forty years of legal practice is a clear indicator that he had substantial experience and knowledge to conform his behavior to the Rules of Professional Conduct, and that he knew the wrongfulness of his actions.

Finally, the misappropriation of estate funds entrusted to him as a fiduciary constitutes illegal conduct.

## VI.

### The Sanction

The remaining issue to be resolved is the appropriate sanction to be imposed. It is well established that the purpose of attorney disciplinary proceedings is to protect the public and preserve the public's confidence in the legal profession, not to punish the lawyer. *See, e.g.*, *Attorney Grievance Comm'n v. Good*, 445 Md. 490, 513 (2015). Determining the appropriate sanction depends on the facts and circumstances of the case, including any aggravating and mitigating factors. *Id.* This Court also aims to issue a sanction that is "commensurate with the nature and gravity of the violations and the intent with which they were committed." *Id.* (quoting *Attorney Grievance Comm'n v. Stein*, 373 Md. 531, 537 (2003)).

39

Here, disbarment is the appropriate sanction for Respondent's numerous and severe violations under our Rules of Professional Conduct, D.C. Rule 1.15, and the Maryland Business Occupations and Professions Article. Among other violations, Respondent failed to properly maintain client funds; misappropriated a large amount of estate funds for personal and family expenses; and engaged in dishonest and deceitful conduct by making intentional misrepresentations to the Orphans' Court as well as to his client.

Respondent's misappropriation of client funds entrusted to his care in and of itself warrants disbarment. *Attorney Grievance Comm'n v. Sullivan*, 369 Md. 650, 655–56 (2002) (citations omitted) ("misappropriation, by an attorney, of funds entrusted to his or her care . . . ordinarily will result in disbarment"). Respondent's pattern of dishonesty also warrants disbarment. *Joseph*, 422 Md. at 707 ("ordinarily, disbarment is the sanction for intentional dishonest conduct"). As such, disbarment is the appropriate sanction. The presence of one mitigating factor cannot overcome the aggregation of Respondent's many transgressions along with several aggravating factors.

For the reasons set forth in this opinion, we issued a per curiam order disbarring Respondent on October 6, 2020. *Attorney Grievance Comm'n v. Karambelas*, 471 Md. 96 (2020).