*Attorney Grievance Commission of Maryland v. Stephen E. Whitted*, AG No. 47, September Term, 2021. Opinion by Gould, J.

**ATTORNEY DISCIPLINE – SANCTIONS – INDEFINITE SUSPENSION**

The Supreme Court of Maryland sanctioned an attorney with an indefinite suspension for repeatedly filing retaliatory meritless claims against his ex-wife, her new husband, her attorneys, and judges who ruled against him; filing meritless appeals; repeating failed arguments; and ignoring rulings. Because such actions took place in tribunals in the State of Washington, the Supreme Court found that the attorney's conduct violated Washington Rules of Professional Conduct 3.1 (Meritorious Claims and Contentions) and 8.4 (Misconduct).

IN THE SUPREME COURT

OF MARYLAND

AG No. 47

September Term, 2021

_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

STEPHEN E. WHITTED

_____

Fader, C.J.,
Watts,
Booth,
Biran,
Gould,
Eaves,
Hotten, Michele D. (Senior Justice, Specially Assigned),

JJ.

_____

Opinion by Gould, J.

_____

Filed: August 1, 2024

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

On December 6, 2021, under Maryland Rule 19-721, the Attorney Grievance Commission of Maryland (the "Commission"), acting through Bar Counsel, filed a Petition for Disciplinary or Remedial Action (the "Petition") against Respondent Stephen E. Whitted. The Commission charged Mr. Whitted with violations of the Maryland Attorneys' Rules of Professional Conduct ("MARPC"), the Georgia Rules of Professional Conduct ("GRPC"), and the Washington Rules of Professional Conduct ("WRPC"). Mr. Whitted was charged with violating MARPC 3.1 (Meritorious Claims and Contentions) (Rule 19-303.1) and 8.4 (Misconduct) (Rule 19-308.4); GRPC 3.1 (Meritorious Claims and Contentions), 4.4 (Respect for Rights of Third Persons), and 8.4 (Misconduct); and WRPC 3.1 (Meritorious Claims and Contentions), 4.4 (Respect for Rights of Third Persons), and 8.4 (Misconduct). Ultimately, at different stages in these proceedings, the Commission withdrew all but the charges alleging violations of WRPC 3.1 (Meritorious Claims and Contentions) and 8.4 (Misconduct).

The hearing judge assigned to this matter held an evidentiary hearing from February 12 to 14, 2024.[1] The Commission presented its case with three witnesses, including Mr. Whitted, and 25 exhibits. Mr. Whitted also testified on his own behalf and called five other witnesses. He entered six exhibits into evidence.

On April 2, 2024, the hearing judge issued findings of fact and conclusions of law (the "findings"). The court found by clear and convincing evidence that Mr. Whitted

---

[1] The hearing for this case was delayed for multiple reasons, including to accommodate both counsels' and the trial court's schedule and due to Mr. Whitted's documented health condition.

violated WRPC 3.1 and 8.4(a), (c), and (d). The hearing judge also found three mitigating factors and six aggravating factors.

As permitted under Maryland Rule 19-728(b), Mr. Whitted excepted to multiple findings. The Commission excepted to three findings.

Oral argument was held before this Court on June 3, 2024. As explained below, we overrule Mr. Whitted's exceptions, sustain two of the Commission's exceptions, overrule one of the Commission's exceptions, and, except as noted in our analysis of MARPC 8.4(c), adopt the hearing judge's findings in all other respects. We determine that indefinite suspension is the appropriate sanction.

# I

# FACTS

## A. *Background Facts*

Mr. Whitted married Lori Jordan in 1985. They had three children, all born between 1993 and 1998.

Mr. Whitted was admitted to the Bar of the State of Maryland on June 21, 1995. Before that, he practiced law in Georgia. He is also admitted to practice law in the District of Columbia and Massachusetts. Mr. Whitted currently resides in Montgomery County, Maryland.

At some point, the family moved to Fulton County, Georgia. In 2006, Mr. Whitted filed for a divorce in the Superior Court of Fulton County. On November 13, 2007, the court issued a Final Judgment and Decree of Divorce. The court awarded the parties joint legal custody of their children, physical custody to Ms. Jordan, and reasonable visitation

to Mr. Whitted. The court ordered Mr. Whitted to pay child support in the amount of $1,735.93 per month and awarded him $55,000 from Ms. Jordan's 401(k) retirement plan. Mr. Whitted was directed to provide Ms. Jordan with an account into which the retirement funds would be transferred. At that time, Mr. Whitted was employed as an Assistant County Attorney for DeKalb County, Georgia.

Mr. Whitted chronically failed to pay child support, and in 2010, Ms. Jordan asked the Superior Court of Fulton County to hold him in contempt, alleging arrearages of $15,075.26. The court determined that Mr. Whitted owed $12,307.93 and, in addition to his regular monthly payment, ordered him to pay $1,000 per month until the arrearages were fully paid.

On July 16, 2010, Ms. Jordan filed a motion in the Superior Court of Fulton County, asking the court's permission to relocate the minor children to North Carolina. Soon after, Mr. Whitted filed a separate lawsuit in that same court, naming as defendants Ms. Jordan; her attorney, George Lawson; Mr. Lawson's law firm; and "John Doe." He alleged that: (1) Mr. Lawson harassed, intimidated, and maliciously injured Mr. Whitted by filing a petition alleging that Mr. Whitted committed emotional cruelty against Ms. Jordan; (2) Ms. Jordan altered court orders; (3) certain court orders were illegal; (4) Ms. Jordan converted "to her own use" the $55,000 from her 401(k) plan that had been awarded to Mr. Whitted; and (5) John Doe had a "tryst" with Ms. Jordan in August 2008 that resulted in a child born

3

in May 2009. Mr. Whitted sought $500,000 in damages from each defendant, plus punitive damages.[2]

On August 30, 2010, in response to Ms. Jordan's motion to bring the children to North Carolina, Mr. Whitted moved for the court to find Ms. Jordan in contempt, order her to immediately return the children to Georgia, deny her motion, and award him physical custody of the children.

In September, Mr. Whitted lost his job, and in October 2010, he ceased paying child support. He did not, however, move for modification of his child support obligation.

On January 6, 2011, Superior Court Judge Bensonetta Tipton Lane granted Ms. Jordan sole physical and legal custody of the children, permitting her to move the children to North Carolina. Mr. Whitted appealed Judge Lane's custody decision, to no avail. Judge Lane also held Ms. Jordan in contempt for failing to transfer the $55,000 from her 401(k) plan. Judge Lane stated, however, that the burden was on Mr. Whitted to provide Ms. Jordan with a valid and executed qualified domestic relations order ("QDRO")[3] and directed him to do so. Mr. Whitted subsequently executed a defective QDRO but failed to take further action to transfer the money from the 401(k) plan.

---

[2] The complaint was eventually dismissed. Mr. Whitted appealed the decision, without success.

[3] "A Qualified Domestic Relations Order (QDRO) is the vehicle by which pension benefits are transferred from one party to another, 'either pursuant to the Marital Disposition Act, or through an attachment in aid of a support obligation.'" *Fischbach v. Fischbach*, 187 Md. App. 61, 94 (2009) (quoting *Janusz v. Gilliam*, 404 Md. 524, 538 (2008)).

On May 5, 2011, Mr. Whitted moved for the recusal of Judge Lane. He also petitioned for mandamus against Judge Lane, requesting that his pending motions be decided within five days by a different judge. The court denied the mandamus petition, holding that it lacked the authority or subject matter jurisdiction to impeach a judicial officer. On September 15, Judge Lane recused herself from Mr. Whitted's cases.

On September 20, 2011, Mr. Whitted filed a complaint in the United States District Court for the Northern District of Georgia against Judge Lane and Ms. Jordan's husband, alleging, among other things, that Judge Lane violated his constitutional rights when:

> (1) in 2009, she advised him that he had waited too long to challenge the award of marital assets in the divorce;
> (2) in 2010, she discarded evidence related to his divorce action;
> (3) in 2010, she attempted to cancel a hearing to determine his property rights and sought to have the matter dismissed;
> (4) in 2010, she issued an unconstitutional ruling regarding a dispute between him and Ms. Jordan over the division of marital assets and funds from a retirement account; and
> (5) she denied him access to the courts.

Because Mr. Whitted's children lived with Ms. Jordan's husband, Mr. Whitted alleged false imprisonment, abduction, loss of consortium, and intentional infliction of emotional distress. He sought: (1) compensatory damages of $1,000,000 from Judge Lane; (2) compensatory damages of $750,000 from Mr. Jordan; (3) an additional $3,000 per day against Mr. Jordan until he returned the children to Mr. Whitted; (4) punitive damages; and (5) attorneys' fees.

The court dismissed the complaint against Judge Lane due to insufficient service of process and declined to exercise supplemental jurisdiction over the state law claims against Mr. Jordan.

5

In late 2011, Mr. Whitted began working for the Prince George's County Attorney as an Assistant County Attorney. Meanwhile, in the summer of 2012, the Jordans moved with the children to King County, Washington.

Between 2010 and 2016, Mr. Whitted made no child support payments. On June 14, 2016, Ms. Jordan, through her attorney, Stacey Smythe, filed to register the Georgia divorce decree in the Superior Court of Washington for King County and to collect unpaid child support.

Two weeks later, Mr. Whitted moved for a dismissal and for contempt, claiming that:

> [b]ecause of [Ms. Jordan's] "unjustifiable misconduct," her unclean hands, her failure to inform this Court of the civil actions previously filed in Georgia and North Carolina, and her contumacious conduct in failing to inform [Mr. Whitted] of the addresses of the Parties' children since 2011, as well as her acts of parental alienation, this Court should decline to exercise its subject matter jurisdiction in this matter.

Mr. Whitted also alleged that Ms. Jordan owed him $55,000, plus accrued interest, for a total of $140,000.

On August 11, 2016, Mr. Whitted filed a writ of garnishment in the Superior Court of Washington for King County against Ms. Jordan's wages.

On August 22, 2016, a Commissioner of the court denied Ms. Jordan's motion to register the Georgia divorce decree, finding that it did not comply with the Uniform Child Custody Jurisdiction and Enforcement Act. Ms. Jordan moved to revise the Commissioner's order. The Honorable Elizabeth Berns reversed the Commissioner's

6

finding and, by order dated December 6, 2016, held that Ms. Jordan substantially complied with that statute.

On January 12, 2017, Judge Berns held a hearing to determine whether Mr. Whitted should be held in contempt for failing to pay child support. Judge Berns found Mr. Whitted in contempt, awarded Ms. Jordan attorneys' fees and costs in the amount of $10,000, and entered judgment for Ms. Jordan for unpaid child support in the amount of $169,868.85, plus interest.

The court subsequently remanded Mr. Whitted into custody with bail set at $5,000, representing about three months of child support. The court further ordered him to pay down his arrearages with monthly payments of at least $2,000. On January 13, 2017, Mr. Whitted's wife, Mary Whitted, made Mr. Whitted's $5,000 bail payment.

On February 9, 2017, Judge Berns issued an order finding that Mr. Whitted's past due child support and health insurance expenses from November 13, 2007, through December 31, 2016, were $164,868.85.[4] Judge Berns' order stated:

> Stephen Earl Whitted is a licensed litigation Attorney with experience in domestic relations. He has been either gainfully employed or self-employed throughout the period in question. Furthermore, Mr. Whitted knew how to go about and should have obtained a modification of the support order if this was not the case. He failed to do so and is therefore liable. He is employed by Prince George's County Maryland Law Office located at 14735 Main Street, Upper Marlboro, MD 20772 as a civil litigator and he earns over $125,000 per year according to his 2016 year-end pay-stubs. Mr. Whitted has no other children whom he is financially responsible for.

---

[4] The court reduced the amount he owed by the $5,000 that Mr. Whitted paid to be released from jail.

Although the order did not address Mr. Whitted's request for a writ of garnishment or his claim for $55,000 from Ms. Jordan's 401(k) plan, it noted that "[t]he issue of the property division involving [Ms. Jordan's] 401k is not properly before this court and there is no agreement to otherwise offset [Mr. Whitted's] back support judgment."

Mr. Whitted appealed Judge Berns' February 9, 2017 order. In an unpublished opinion filed on February 12, 2018, the Court of Appeals of Washington found that Mr. Whitted's arguments were meritless and affirmed Judge Berns' rulings. *Jordan v. Whitted*, 2 Wash. App. 2d 1034 (Wash. Ct. App. Feb. 12, 2018) (unpublished).

In March 2017, one month after he filed his appeal, Mr. Whitted filed a complaint against Judge Berns with the State of Washington Commission on Judicial Conduct. He alleged that Judge Berns operated her courtroom with "an atmosphere of fear and intimidation" and that her February 9, 2017 order violated the Federal Consumer Protection Act and his constitutional due process rights.

On May 2, 2018, Mr. Whitted sued Ms. Jordan, Mr. Jordan, Ms. Smythe, Ms. Smythe's law partner, and Ms. Smythe's employer in the United States District Court for the Western District of Washington. He alleged: (1) intentional interference with parent-child custodial relationship; (2) civil conspiracy; (3) abuse of process; (4) common law invasion of privacy; (5) invasion of privacy – intrusion into seclusion; (6) state constitutional right to privacy; (7) defamation; (8) civil conspiracy; (9) intentional infliction of emotional distress; and (10) negligent infliction of emotional distress. Mr. Whitted requested compensatory damages of $750,000, plus punitive damages.

8

On June 13, 2019, the Honorable John C. Coughenour granted the defendants' motions for summary judgment and dismissed Mr. Whitted's claims with prejudice. The court also granted the Jordans' motion for Rule 11 sanctions, ordering Mr. Whitted to pay the Jordans for the attorneys' fees incurred in defending the action. The court stated:

> The Court concludes that Mr. Whitted's complaint is frivolous and that it was filed for the improper purpose of harassing the Jordans. As the Court has previously explained, Mr. Whitted's intentional interference claim against Mr. Jordan is barred by Washington's statute of limitations. Mr. Whitted alleges that Mr. Jordan interfered with his parent-child relationship based on conduct dating back to 2010—allegations that are clearly barred by the applicable three-year statute of limitations.
>
> Moreover, these are largely the same allegations that Mr. Whitted made against Mr. Jordan in his 2011 federal lawsuit, in which Mr. Whitted claimed Mr. Jordan's actions caused Mr. Whitted to suffer a loss of affection with his children. This procedural history precludes Mr. Whitted from arguing that his claim could now be timely or that he conducted an adequate pre-filing review before filing the claim. Mr. Whitted offers no contrary legal authority.
>
> Mr. Whitted's abuse of process claim against Ms. Jordan is similarly frivolous. The claim strikes the Court as a veiled attempt to challenge the rulings made by the King County Superior Court and Washington Court of Appeals. The conduct that Mr. Whitted alleges forms the basis of this claim—Ms. Smythe registering the divorce decree under the UCCJEA instead of UIFSA—was explicitly determined to be harmless by both state courts. Mr. Whitted repeatedly refers to the commissioner's initial ruling on the registration issue, but that ruling was overturned by the superior court and effectively rendered meaningless. Even more fatally for his claim, Mr. Whitted has neither alleged nor supported with evidence, a single act by Defendants in the King County action taken "to accomplish an end not within the purview of the suit." He cannot do so because Ms. Jordan's lawsuit was a legitimate civil action in which she prevailed both at trial and on appeal.
>
> All of Mr. Whitted's alleged privacy torts are also frivolous for several reasons. As an initial matter, Mr. Whitted's privacy related claims are based on a picture taken of him in a public hallway of the King County courthouse. Controlling Washington precedent is clear that such facts do not support an invasion of privacy claim or an intrusion into seclusion claim. In

9

the face of this on-point Washington precedent, Mr. Whitted attempts to support his claims with unrelated federal case law. Mr. Whitted neither alleged factual allegations, nor came forward with evidence that would support his theories for invasion of privacy or intrusion into seclusion. His inability to distinguish this caselaw is also indicative of his failure to conduct an adequate prefiling review of his claims.

But there are several other problems with Mr. Whitted's privacy and defamation claims. It is unclear to the Court how Ms. Jordan could be liable for physically intruding into Mr. Whitted's seclusion based on photographs taken by Ms. Smythe. As the Court previously mentioned, Washington does not recognize a civil cause of action for violation of article I, section 7 of the state constitution. Yet, Mr. Whitted alleged such a claim against Ms. Jordan, without providing any argument or justification for departing from Washington law. Mr. Whitted did not support his defamation claim by alleging facts or providing evidence that Ms. Jordan published anything false about him. Mr. Whitted neither alleges nor explains how a picture of him in handcuffs with the caption "off to jail" could be defamatory in light of the undisputed fact that at the time of the picture, Mr. Whitted had just been ordered into custody and was being escorted to the King County jail.

In addition to being frivolous, Mr. Whitted's claims appear to be aimed at harassing the Jordans. The record before the Court evinces a troubling pattern of retaliatory litigation by Mr. Whitted against Ms. Jordan and others associated with her since the couple's divorce well over a decade ago. Unfortunately, this lawsuit appears to be the latest iteration of this troubling pattern. The pattern goes like this: Ms. Jordan files a meritorious lawsuit against Mr. Whitted related to the divorce decree, and Mr. Whitted responds by filing a separate unsuccessful lawsuit.

In 2008, Ms. Jordan sought and obtained a contempt order against Mr. Whitted for failing to pay child support. Mr. Whitted later filed a lawsuit against Ms. Whitted, her lawyer, and "John Doe" for their alleged improper litigation conduct and interfering with Mr. Whitted's parent-child relationships. Mr. Whitted's claims were eventually dismissed. In 2011, Ms. Jordan sought and obtained sole legal and physical custody of the children. Mr. Whitted responded by filing a federal lawsuit against a superior court judge and Mr. Jordan, alleging improper litigation conduct and interfering with Mr. Whitted's parent-child relationships. His claims were ultimately dismissed without prejudice.

In 2016, Ms. Jordan obtained a substantial judgment against Mr. Whitted for six years of unpaid child support in the King County action. After

10

that judgment was affirmed by the Washington State Court of Appeals, Mr. Whitted filed the present lawsuit. He again alleges that Ms. Jordan, her lawyer, and Mr. Jordan have engaged in improper litigation conduct and interfered with his parent-child relationships. As the Court has explained in detail, Mr. Whitted's claims in this lawsuit are frivolous. Given Mr. Whitted's past litigation conduct and the deficiencies in the present complaint, the Court concludes that Mr. Whitted filed this lawsuit for the improper purpose of harassing the Jordans. Mr. Whitted's intent to harass appears even more obvious when considering that all these lawsuits arose from, or can be traced back to, an acrimonious divorce.

Enough is enough. Mr. Whitted's failure to comply with Rule 11 warrants monetary sanctions, which are necessary to deter him from filing further baseless lawsuits against the Jordans.

(Internal citations omitted). Mr. Whitted appealed, and the United States Court of Appeals for the Ninth Circuit affirmed the judgment and awarded the Jordans an additional $13,540 for attorneys' fees they incurred on appeal. *Whitted v. Jordan*, 815 F. App'x 202 (9th Cir. 2020).

On August 28, 2019, Mr. Whitted filed a motion in the Superior Court of Washington for King County to vacate the January 12, 2017 judgment entered against him by Judge Berns that had found him in contempt for failing to pay child support. In his motion, he also sought to relitigate issues already fully litigated.

In response, on October 4, 2019, Ms. Jordan moved for Rule 11 sanctions against Mr. Whitted and to designate him as a vexatious litigant. Mr. Whitted responded with a motion to assign the case to a judge other than Judge Berns, arguing that because he had filed a judicial complaint against Judge Berns, she should recuse herself. On October 15, Judge Berns denied Mr. Whitted's motion.

11

On November 1, 2019, Judge Berns held a hearing on Ms. Jordan's motion for Rule 11 sanctions and Mr. Whitted's motion to vacate. Mr. Whitted failed to appear. The court entered an order designating Mr. Whitted as a vexatious litigant. The court sanctioned him in the amount of $9,425.

Mr. Whitted appealed this order on November 25. Besides appealing the vexatious litigant finding and the denial of the motion to vacate his contempt order, Mr. Whitted tried to relitigate issues that had been previously decided and affirmed on appeal, such as his request that Judge Berns be recused.

On August 3, 2020, the Washington Court of Appeals affirmed the trial court's order sanctioning Mr. Whitted and designating him a vexatious litigant. And, on September 8, that court ordered Mr. Whitted to pay the Jordans $27,984.22 for the attorneys' fees they incurred on appeal. This was in addition to the $9,425 previously awarded by the trial court.

## B. The Commission's Investigation

On July 8, 2020, the Jordans filed a complaint with the Commission, alleging, among other things, that Mr. Whitted

> demonstrated contempt for the authority of multiple courts by refusing to comply with their Orders and Judgments, has repeatedly made false and misleading statements in his pleadings against the Jordans, has abused his license to practice law by engaging in frivolous and abusive litigation for the sole purpose of harassment, and has knowingly made false statements and claims against officers of the Court.

Mr. Whitted responded on August 6, claiming that he "at all times [had] been ready and willing to pay the amount that is legally owed to Ms. Jordan" but that Ms. Jordan's "personal conduct and unfair litigation tactics have prevented this from occurring." He also

12

rehashed old arguments and attempted to litigate matters that various courts had previously resolved.

## II

## STANDARD OF REVIEW

This Court has original jurisdiction over attorney discipline proceedings and conducts an independent review of the hearing judge's findings of fact and conclusions of law. *Att'y Grievance Comm'n v. Hamilton*, 444 Md. 163, 178 (2015) (citing *Att'y Grievance Comm'n v. Harmon*, 433 Md. 612, 623 (2013)). We review the hearing judge's conclusions of law without deference. Md. Rule 19-740(b)(1).

Either party may file exceptions to the hearing judge's findings of fact or conclusions of law. Md. Rule 19-728(b). We may treat any facts not challenged by exceptions as established. Md. Rule 19-740(b)(2)(A). "If exceptions are filed," we determine "whether the findings of fact have been proved by the requisite standard of proof set out in Rule 19-727(c)." Md. Rule 19-740(b)(2)(B).

Under Rule 19-727(c), the Commission must prove its allegations of misconduct by clear and convincing evidence. As we stated in *Attorney Grievance Commission v. Johnson*, 472 Md. 491, 526 (2021) (cleaned up):

> If a party excepts to the hearing judge's findings, this Court shall determine whether the findings of fact have been proved by the requisite standard of proof set out in Rule 19-727(c). We may confine our review to the findings of fact challenged by the exceptions, mindful though, that the hearing judge is afforded due regard to assess the credibility of witnesses. This Court will not disturb the hearing judge's findings where there is any competent evidence to support the finding of fact. Therefore, if the hearing judge's factual findings are not clearly erroneous and the conclusions drawn from

13

them are supported by the facts found, exceptions to conclusions of law will be overruled.

In contrast, the respondent must prove any affirmative defenses and any mitigating or extenuating factors by a preponderance of the evidence. Md. Rule 19-727(c).

## III

## DISCUSSION

Mr. Whitted excepts to multiple factual findings and conclusions of law. The Commission excepts to one mitigating factor found by the hearing judge and the hearing judge's failure to find two additional aggravating factors. Each exception is addressed below.

### A.    *Mr. Whitted's Exceptions to the Findings of Fact*

Most of Mr. Whitted's exceptions to the hearing judge's findings of fact are of the "failure to find" variety—that is, he complains that the hearing judge did not make findings that align with his characterization of the various litigation events discussed above. Mr. Whitted contends that the hearing judge failed to find that:

- The final custody order issued by the Georgia state court provided that although Ms. Jordan "shall have final decision making with respect to all matters connected with [the children's] wellbeing, . . . she must first discuss major decisions, such as changing their schools, consenting to an operation, starting or terminating therapy, etc., with [Mr. Whitted]."
- The final custody order issued by the Georgia state court required Ms. Jordan to inform Mr. Whitted about the children's events and activities and to allow Mr. Whitted additional visitation with their youngest child.
- Ms. Jordan did not provide Mr. Whitted with the family's Washington address.
- While living in Washington, Ms. Jordan violated the terms of the final custody order by neglecting to inform Mr. Whitted about the children's lives and activities.
- While living in Washington, Ms. Jordan failed to foster love and affection in the children for Mr. Whitted, as required by the unamended terms of the divorce decree.

14

- From 2010 through June 13, 2016, Ms. Jordan rejected Mr. Whitted's offers to her to pay child support and the children's health care expenses.
- Ms. Jordan never asked the Georgia state courts to terminate their continuing and exclusive jurisdiction over the parties' domestic matters.
- Neither Ms. Jordan nor her counsel filed a Uniform Interstate Family Support Act Petition, as required by the State of Washington.
- Ms. Jordan never obtained a certified court order holding Mr. Whitted in contempt for refusing to timely pay child support, as required by Georgia law.
- Ms. Jordan's Washington state court child support case was wrongfully reassigned from Judge North to Judge Berns.
- When Ms. Smythe moved to remove the matter from Judge North's consideration, she falsely certified that she had a "conflict" with Judge North.
- Ms. Smythe filed a false affidavit to seek reassignment of the case from Judge North to Judge Berns.
- The hearing before Judge Berns was held in an atmosphere of fear and intimidation due to the presence of three armed Deputy Sheriffs who stood a few feet directly behind Mr. Whitted during the hearing.
- The judgment entered by Judge Berns was inflated, as it included monetary amounts for items Ms. Jordan was not entitled to collect from Mr. Whitted, such as college tuition.
- The $169,868.85 figure accepted by Judge Berns wrongly included health care expenses that were not proven or established by Ms. Jordan.
- Mr. Whitted should not have been held in contempt at the February 9, 2017 hearing.
- As of February 9, 2017, the accrued amount with interest that Ms. Jordan owed to Mr. Whitted was $114,950.
- During the February 9, 2017 hearing, Mr. Whitted offered to pay the amount owed to Ms. Jordan, represented to Ms. Jordan that there was no need for the continuation of any lawsuit, and conceded his rights to the $114,950 that Ms. Jordan then owed him, which served as a setoff against his child support arrearage.
- Judge Berns abused her discretion in the February 9, 2017 hearing, by ordering Mr. Whitted to pay child support arrearages in the amount of $2,000 per month.
- On May 11, 2017, Judge Berns recused herself from another civil action filed in Washington state court involving Ms. Jordan and Mr. Whitted, and in so doing, she issued an order stating that "Judge Berns is prejudiced . . . such that a fair and impartial hearing cannot be obtained."
- Mr. Whitted filed the federal action to try to reestablish and rehabilitate the parent-child relationship with his children, not to harass Ms. Jordan and her husband.
- All defendants filed answers to the federal action without first moving to dismiss, signifying the claims were facially meritorious.

15

- In a minute order entered on April 22, 2019, the federal court denied the Jordans' motion for sanctions.
- The federal district court prematurely granted summary judgment against Mr. Whitted and issued sanctions against him while discovery remained ongoing, and Mr. Whitted had pending motions for a continuance and for leave to file an amended complaint.
- Ms. Jordan asked the Commission to compel Mr. Whitted to pay all outstanding money judgments that she had obtained against him.
- The Commission exerted pressure on Mr. Whitted to pay all sums demanded by Ms. Jordan.
- The Commission improperly rejected Mr. Whitted's April 2021 offer to pay the full demand that Ms. Jordan was then making, which would have resolved the entire matter before the petition was ever filed.

Mr. Whitted's "failure to find" exceptions have no merit. The hearing judge was tasked with determining the facts relevant to the specific charges of misconduct, not to relitigate the many state and federal proceedings where Mr. Whitted had received adverse rulings. And the hearing judge was within her discretion not to credit Mr. Whitted's testimony on such matters and to decline to ascribe the significance Mr. Whitted attaches to such matters. We therefore overrule Mr. Whitted's "failure to find" exceptions.

Mr. Whitted also excepts to the hearing judge's findings that detail the events in the custody and child support litigation in Georgia. He claims that such findings are irrelevant because the charges under the GRPC were dropped. We overrule this exception for two reasons. *First*, the findings provided history and context to the pending charges and are therefore relevant. *Second*, Mr. Whitted does not contend that any such findings were not supported by the evidence. Indeed, the hearing judge supported each finding with citations to the relevant portions of the transcript and exhibits.

Based on our independent review of the record, we conclude that the hearing judge's findings of fact were supported by clear and convincing evidence. Accordingly, we adopt the hearing judge's findings of fact, except that we sustain two of the Commission's exceptions as to aggravating and mitigating factors.

## B.     Mr. Whitted's Exceptions to the Hearing Judge's Conclusions of Law

The hearing judge found, by clear and convincing evidence, that Mr. Whitted violated WRPC 3.1 (Meritorious Claims and Contentions) and 8.4 (Misconduct). Mr. Whitted excepts to both findings on general and specific grounds. We address each in turn.

### 1.  Improper Motives of Ms. Jordan

According to Mr. Whitted, the hearing judge's legal conclusions should be disregarded because the charges against him were animated by Ms. Jordan's improper motive to force him to pay the money he owes her. This exception has no merit. The hearing judge stated:

> The Court finds that it is wholly appropriate to explore the motivations of a complaining witness to show bias, prejudice or to attack their credibility. However, the fact that a witness may have an "agenda" does not go to the propriety of the AGC to bring disciplinary charges. The Respondent has not cited any authority that supports such a position in this case.

In other words, the hearing judge correctly understood Ms. Jordan's personal motives went to her credibility, which the hearing judge was in the best position to assess. We therefore overrule this exception.

### 2.  Improper Motives of the Commission

Mr. Whitted also excepts to the hearing judge's legal conclusions because, he alleges, the Commission pursued this disciplinary proceeding for improper motives. He

17

claims that Lydia Lawless, who was Bar Counsel during the investigation, exerted pressure on him to pay Ms. Jordan the money he owes. He also claims that Ms. Lawless rejected his offer to pay Ms. Jordan in full. This exception has no merit.

*First*, Mr. Whitted provides no evidentiary support for his allegations.

*Second*, even if his allegations were true, he alleges no improper motive by Ms. Lawless. As the hearing judge stated: "[t]he Respondent has not alleged any impropriety, improper motive, or ill will on the part of the staff attorney or the commission, itself. Nor has the Respondent introduced any evidence for this Court to find support for such an allegation." We agree with the hearing judge.

*Third*, Mr. Whitted did not need Ms. Lawless or anyone else to broker a resolution with Ms. Jordan, nor was that Ms. Lawless' job. He needs only to pay Ms. Jordan what he owes her.

Accordingly, we overrule these exceptions.

### 3. *Pro Se Exception*

Mr. Whitted does not dispute that jurisdiction in this Court is proper under MARPC 19-308.5(a):

> (1) An attorney admitted by the Supreme Court to practice in this State is subject to the disciplinary authority of this State, regardless of where the attorney's conduct occurs.
> (2) An attorney not admitted to practice in this State is also subject to the disciplinary authority of this State if the attorney:
>> (A) provides or offers to provide any legal services in this State,
>> (B) claims to be practicing law in this State, or
>> (C) has an obligation to supervise or control another attorney practicing law in this State whose conduct constitutes a violation of these Rules.

18

Nor does Mr. Whitted dispute the applicability of the choice of law provisions in MARPC 19-308.5(b)(1), which provides:

(b) In any exercise of the disciplinary authority of this State, the rule of professional conduct to be applied shall be as follows:
    (1) for conduct in connection with a matter pending before a tribunal, the rules of the jurisdiction in which the tribunal sits, unless the rules of the tribunal provide otherwise[.]

Thus, because the alleged misconduct took place in the state and federal courts of Washington, Mr. Whitted agrees that this Court should apply the WRPC.

Mr. Whitted argues, however, that his conduct did not run afoul of the WRPC because as a pro se litigant, his conduct was not subject to those rules. He cites to WRPC 8.5(a), which states:

A lawyer admitted to practice in this jurisdiction is subject to the disciplinary authority of this jurisdiction, regardless of where the lawyer's conduct occurs. A lawyer not admitted in this jurisdiction is also subject to the disciplinary authority of this jurisdiction if the lawyer provides or offers to provide any legal services in this jurisdiction. A lawyer may be subject to the disciplinary authority of both this jurisdiction and another jurisdiction for the same conduct.

Mr. Whitted contends that the first sentence of WRPC 8.5(a) does not apply because Mr. Whitted is not admitted to the Bar of the State of Washington. And he contends that the second sentence does not apply because he did not "provide[] or offer[] to provide any legal services" in Washington. As Mr. Whitted sees it, out-of-state attorneys are subject to the WRPC only if they provide or offer to provide legal services to third parties. Mr. Whitted provides no authority to support his argument.

Mr. Whitted misconstrues WRPC 8.5(a). That provision, by its plain terms, identifies the circumstances in which an attorney is subject to the disciplinary authority of

19

the State of Washington. As noted above, Mr. Whitted conceded that, as a Maryland lawyer, he is subject to the disciplinary authority of *this* Court under MARPC 19-308.5(a). Mr. Whitted also conceded that under subsection (b)(1) of that Rule, this Court applies the WRPC because the alleged misconduct occurred in Washington tribunals—that is, its state and federal courts. *Att'y Grievance Comm'n v. Tatung*, 476 Md. 45, 82 (2021) (applying the federal immigration rules to misconduct in an immigration proceeding under MARPC 8.5(b)(1)). Accordingly, Mr. Whitted's exception based on his pro se representation is overruled, and we proceed to apply the WRPC as required under MARPC 19-308.5(b)(1).

### 4. WRPC 3.1

WRPC 3.1 provides:

> A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law. A lawyer for the defendant in a criminal proceeding, or the respondent in a proceeding that could result in incarceration, may nevertheless so defend the proceeding as to require that every element of the case be established.

"A frivolous position is one that a lawyer of ordinary competence would recognize as lacking in merit." *In re Disciplinary Proc. Against Jones*, 338 P.3d 842, 854 (Wash. 2014). For example, in *In re Disciplinary Proceeding Against Cottingham*, 423 P.3d 818 (Wash. 2018), the Supreme Court of Washington made findings that could accurately characterize Mr. Whitted's conduct:

> [The attorney] repeatedly filed motions and appeals that had no basis in law or fact and had already been decided by various trial and appellate courts. [The attorney]'s filings consistently failed in the courts and were repeatedly declared frivolous. This put [the attorney] on notice of the meritless, frivolous, and sanctionable nature of his challenges. Even so, [the attorney]

20

continued his crusade and relentlessly pursued litigation intending, at least in part, to harass and annoy the [opposing parties]. For these reasons, we adopt the hearing officer and Board's conclusions that [the attorney] violated [W]RPC 3.1, and [W]RPC 4.4(a).

*Id.* at 824 (internal citations omitted); *see also Jones*, 338 P.3d at 854 ("Based on the evidence presented at the hearing, the hearing officer found that Jones' motions were relentless attempts to relitigate . . . with the intent to delay proceedings and harass his brothers.").

Here, the hearing judge found that Mr. Whitted violated WRPC 3.1 by clear and convincing evidence:

> The Respondent violated WRPC Rule 3.1 by filing repeated retaliatory claims against the Jordans and their attorneys that lacked any merit, and often had no basis in fact or law. The Respondent compounded his violation of WRPC Rule 3.1 through further meritless appeals, repeatedly making the same arguments that been ruled against him at the trial court level and then explicitly found not to have merit at the appellate level.
>
> . . . The opinions and orders of the various courts that make up the litigation between the Respondent and Ms. Jordan were properly admitted into evidence and have been reviewed. This Court does find them persuasive, specifically in the context of the Respondent's willful disregard of settled issues, and continued presentation of claims that on their face have no merit.
>
> . . .
>
> It is not reasonable to appeal a decision, have that decision affirmed, then go back to the trial court and attempt to relitigate the same issue. It is clear from the record that the Respondent is displeased with rulings that are not in his favor. That is to be expected. However, when rulings of a Court are ignored and disregarded because they do not align with a particular narrative, an attorney runs the real risk of engaging in frivolous litigation, as the Respondent did here, repeatedly. Therefore, this Court finds that the Petitioner has met its burden and proven that the Respondent has violated WRPC Rule 3.1.

21

Mr. Whitted argues that "no state or federal court in the State of Washington ever adjudicated or determined that [he] violated any WRPC provision" and "no trial judge, appellate justice, or administrative body ever referred [him] for discipline in the State of Washington, or even to [the Commission] for discipline in the State of Maryland[.]" According to Mr. Whitted, "[t]his pattern of inaction strongly suggests" that he did not violate the WRPC. He also contends that in finding that he engaged in frivolous litigation, the hearing judge overlooked "the fundamentally flawed nature of the Washington proceedings that Ms. Jordan initiated. These proceedings were rife with violations of [Mr.] Whitted's basic right to due process."

That no court in Washington specifically and expressly found that Mr. Whitted violated WRPC 3.1 does not matter. *First*, those cases were not disciplinary matters; thus whether Mr. Whitted violated the WRPC was not at issue. *Second*, whether he violated this rule is a legal conclusion for this Court to make based on the evidence admitted at the hearing. *Third*, as shown above, Mr. Whitted was repeatedly sanctioned for frivolous and vexatious litigation.

In sum, having independently examined the record, we find that the hearing judge's conclusion that Mr. Whitted violated WRPC 3.1 was supported by clear and convincing evidence.

## 5. *WRPC 8.4*

WRPC 8.4 provides, in relevant part:

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

* * *

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; [or]
(d) engage in conduct that is prejudicial to the administration of justice[.]

The hearing judge found that Mr. Whitted violated subsections (a), (c), and (d).

### a. WRPC 8.4(a)

The hearing judge found that Mr. Whitted violated WRPC 8.4(a) because he violated WRPC 3.1. Mr. Whitted excepts to this conclusion, arguing that he violated no other rule and therefore, he cannot be liable for violating this rule. As we hold that the hearing judge correctly found that Mr. Whitted violated WRPC 3.1, we overrule Mr. Whitted's exception.

### b. WRPC 8.4(c)

Mr. Whitted protests that he never lied in any of the proceedings in Washington and that he was never charged for making a false statement in any of those proceedings.

The hearing judge found that Mr. Whitted violated Rule 8.4(c) because

he made knowing and intentional misrepresentations to the King County Superior Court on January 12, 2017, when he stated that he was current in his child support obligations, and that he gave to Ms. Jordan the $55,000.00 from the Divorce Decree to be used towards child support.

The hearing judge also noted that Mr. Whitted falsely testified in *this* proceeding that he had "conceded" to Ms. Jordan a $55,000 lump-sum payment towards the child support

23

payments and found that he instead "acted to the contrary by filing a garnishment alleging that [the $55,000] obligation was still outstanding and pursuing interest on the judgment."

The hearing judge's finding that Mr. Whitted violated WRPC 8.4(c) by making misrepresentations to the Washington court is supported by clear and convincing evidence, and we therefore overrule Mr. Whitted's exception and find that Mr. Whitted violated WRPC 8.4(c).

To the extent that the hearing judge also found that Mr. Whitted violated WRPC 8.4(c) by testifying falsely in this proceeding, that finding was incorrect. Mr. Whitted could not violate a Washington rule by testifying falsely in a Maryland court, and the Commission did not charge him as such. *See Att'y Grievance Comm'n v. Frank*, 470 Md. 699, 733 (2020); *In re Ruffalo*, 390 U.S. 544, 551 (1968).

### c. WRPC 8.4(d)

The hearing judge found that the facts supporting Mr. Whitted's violation of WRPC 3.1 also supported a violation of WRPC 8.4(d). Mr. Whitted excepts to this conclusion, arguing that he was not the one who violated this rule. Rather, he argues that Ms. Jordan and Ms. Smythe violated the rule when they "engag[ed] in judge shopping, and attempt[ed] to extort monies from [him] to which they had no legal right under the express terms of the Divorce Judgment."

We agree with the hearing judge that the evidence supporting the WRPC 3.1 violation likewise establishes that Mr. Whitted's conduct was prejudicial to the administration of justice in violation of WRPC 8.4(d). We therefore overrule Mr. Whitted's exception.

24

## C.	*Mitigating Factors*

This Court recognizes the following mitigating factors in considering the appropriate sanction:

> (1) the absence of prior attorney discipline; (2) the absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith efforts to make restitution or to rectify the misconduct's consequences; (5) full and free disclosure to [the Commission] or a cooperative attitude toward the attorney discipline proceeding; (6) inexperience in the practice of law; (7) character or reputation; (8) a physical disability; (9) a mental disability or chemical dependency, including alcoholism or drug abuse, where: (a) there is medical evidence that the lawyer is affected by a chemical dependency or mental disability; (b) the chemical dependency or mental disability caused the misconduct; (c) the lawyer's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (d) the recovery arrested the misconduct, and the misconduct's recurrence is unlikely; (10) delay in the attorney discipline proceeding; (11) the imposition of other penalties or sanctions; (12) remorse; (13) remoteness of prior violations of the [MARPC]; and (14) unlikelihood of repetition of the misconduct.

*Att'y Grievance Comm'n v. Allenbaugh*, 450 Md. 250, 277-78 (2016) (quoting *Att'y Grievance Comm'n v. Shuler*, 443 Md. 494, 507 (2015)). Here, the hearing judge found three mitigating factors: (1) the absence of any prior attorney discipline; (2) character and reputation; and (3) the imposition of other penalties or sanctions.

Mr. Whitted challenges the hearing judge's failure to also find the mitigating factor of remorse. The Commission excepts to the hearing judge's finding that the imposition of other penalties and sanctions in the Washington litigations constitutes a mitigating factor.

### 1.	*Mr. Whitted's Remorse Exception*

According to Mr. Whitted:

The Circuit Court's finding that [he] did not display remorse overlooks [his] repeated statements of regret that Ms. Jordan's course of conduct prevented

25

[him] from maintaining any sort of relationship with his children. Ms. Jordan's obfuscations also prevented [him] from learning of much less paying for the children's medical expenses. If the monies that Ms. Jordan owed [him] that continued to accrue from her non-payment of funds from her 401k account to [him] were offset from the child support that [he] allegedly owed Ms. Jordan, [then] Ms. Jordan owed monies to [him] as of January 12, 2017, rather than the other way around. [His] assertion of his legal rights in the Washington proceedings should not be held against him as [a] non-mitigating factor.

How Mr. Whitted believes this explanation reflects remorse for his actions escapes us. And we note that when pressed by this Court at oral argument to explain his professed remorse, Mr. Whitted explained that he regretted everything that occurred, but that it was not his fault because everything he did was justified and required by the conduct of others.

The hearing judge had an ample basis to find that Mr. Whitted was not remorseful for his actions. As such, we overrule his exception.

### 2. *The Commission's Exception to Imposition of Other Penalties or Sanctions as a Mitigating Factor*

The hearing judge concluded that monetary sanctions imposed against Mr. Whitted for bad faith litigation conduct in the Washington courts was a mitigating factor proven by a preponderance of the evidence. The Commission excepts to this conclusion for two independent reasons. *First*, relying on *Attorney Grievance Commission v. Bonner*, 477 Md. 576 (2022), the Commission explains:

The Respondent's sustained and deliberate pattern of harassing the Jordans through litigation was the primary reason for the sanctions imposed by the Washington Courts. It is this very conduct that has led to the findings of professional misconduct by the hearing judge in the instant case. The Respondent having been sanctioned by the Washington Courts for his intentional misconduct should not now be recognized by this Court as a mitigating factor.

26

*Second*, the Commission points out that Mr. Whitted has not paid the sanctions assessed against him.

We sustain the Commission's exception on the latter point, but not the first. We explain.

In *Bonner*, Mr. Bonner had "engaged in a pattern of misconduct that involved expensing personal items to [his law firm] and by making a variety of false statements to cover up the true nature of those expenses by characterizing them as client development." *Id.* at 591 (cleaned up). The hearing judge found the mitigating factor of "the imposition of other penalties or sanctions" based on Mr. Bonner's tarnished reputation, the loss of his job, the loss of his ownership interest in his firm, and future disciplinary actions in the District of Columbia. *Id.* at 610. This Court disagreed. Relying on *Attorney Grievance Commission v. Spery*, 371 Md. 560 (2002) and *Attorney Grievance Commission v. Levin*, 438 Md. 211 (2014), we explained:

> In many instances, an attorney's misconduct—particularly where theft and deceit are involved—is certain to cause significant, natural consequences beyond those related to the disciplinary proceeding. Indeed, it is often the case that more egregious misconduct leads to more serious consequences, such as the termination of employment or loss of a reputation. We will not recognize the natural consequences of intentional misconduct as constituting a mitigating factor that would militate against the imposition of a more serious sanction. To do so could potentially create an illogical "seesaw" effect—where more egregious misconduct that results in greater adverse natural consequences leads to a reduced sanction because we consider the adverse consequences as a mitigating factor.

*Bonner*, 477 Md. at 611.

As they were in *Bonner*, *Spery* and *Levin* are instructive here. We disbarred Mr. Spery for misappropriating funds from a real estate partnership. *Spery*, 371 Md. at 564,

27

570-72. He argued that "the exorbitant payments exacted as blackmail or extortion by the other partners" constituted the mitigating factor of "the imposition of other penalties or sanctions." *Id.* at 571 (cleaned up). Examining this factor for the first time, we observed that in other jurisdictions that had considered this factor, courts limited its application to circumstances "only where the sanctions were disciplinary or punishment in nature." *Id.* We therefore rejected Mr. Spery's argument, concluding that the financial ramifications of his partners' separate misconduct were not a mitigating factor. *Id.* at 572. Similarly, in *Levin*, we rejected Mr. Levin's argument that his embarrassment and fear for his reputation provided mitigation where he misrepresented his caseload and created fictitious clients and paperwork to receive more compensation from his law firm. 438 Md. at 216-17, 221-22.

In sum, under *Bonner*, *Spery*, and *Levin*, the natural financial and reputational consequences of an attorney's misconduct suffered outside of any formal disciplinary or justice system are not considered "other penalties or sanctions" and may not be considered as mitigating factors in an attorney disciplinary proceeding.

But that same reasoning does not extend to sanctions imposed by a court for the same conduct at issue in the attorney disciplinary proceeding. Our sanctions are intended "not to punish the lawyer, but instead to protect the public and the public's confidence in the legal profession." *Att'y Grievance Comm'n v. Collins*, 477 Md. 482, 510 (2022) (quoting *Att'y Grievance Comm'n v. Slate*, 457 Md. 610, 646 (2018)). The mitigating factor of "the imposition of other penalties or sanctions" reflects an awareness that where another court has already imposed penalties or sanctions directly addressing the conduct at issue, some of what we seek to accomplish through our choice of sanction may already have been

28

accomplished. Sanctions or penalties imposed by such other official bodies are thus different in kind from the natural reputational or financial consequences of one's actions.

Here, the court-imposed sanctions for Mr. Whitted's litigation misconduct in the Washington courts are not "the natural consequences of [his] intentional misconduct." *Bonner*, 477 Md. at 611. Instead, they are consequences that were imposed through an official court process to identify, determine, and punish litigation misconduct and, as such, may support a finding of this mitigation factor.

We recognize that our conclusion here may seem at odds with a brief passage in our decision in *Attorney Grievance Commission v. Malone*, 482 Md. 82, 110 (2022). There, we overruled Mr. Malone's exception to the hearing judge's failure to find the mitigating factor of "the imposition of other penalties or sanctions" because we stated that the cancellation of his Texas law license and Texas's refusal to approve his reapplication were "nothing more than the natural consequences of his having made false statements on bar applications in Texas." *Id.* Although it involved sanctions imposed by another official entity, *Malone* is distinguishable for its relatively unique posture.

Ordinarily, disciplinary action taken by another state leads to the imposition of reciprocal discipline in Maryland. Md. Rule 19-737. When we impose reciprocal discipline, we do not provide credit for the discipline imposed by another jurisdiction. To the contrary, in the absence of exceptional circumstances, we "impose corresponding discipline," using the other jurisdiction's sanction as a baseline for our own. Md. Rule 19-737(e), (f). In *Malone*, however, the Supreme Court of Texas had not revoked Mr. Malone's Texas Bar license through the standard disciplinary process, but pursuant to a

29

rule permitting the Texas Board of Law Examiners to recommend withdrawal and cancellation of a law license upon determining that the license was obtained fraudulently. *Malone*, 482 Md. at 91-95. Maryland, therefore, was not in a position to impose reciprocal discipline. It was in that context that we determined that Mr. Malone should not receive credit for the loss of his Texas Bar license as a mitigating factor in his Maryland disciplinary proceedings. *Id.* at 110. Thus, *Malone* applies where the disciplinary sanctions issued by another jurisdiction's highest court are imposed *outside* of the standard attorney grievance process. *Malone*, therefore, does not apply here.

Although we recognize that the sanctions imposed by the Washington courts would qualify as a mitigating factor, we also recognize that Mr. Whitted cannot claim its benefit because, on this record, he has not paid the sanctions. Thus, the rationale for treating such sanctions as a mitigating factor—that the goal of protecting the public may have been advanced somewhat by such sanctions—does not apply here. Accordingly, we sustain the Commission's exception to the hearing judge's finding that the sanctions imposed by the courts of the State of Washington is a mitigating factor.

### D. *Aggravating Factors*

The Court considers the following aggravating factors:

(1) prior attorney discipline; (2) a dishonest or selfish motive; (3) a pattern of misconduct; (4) multiple violations of the [MARPC]; (5) bad faith obstruction of the attorney discipline proceeding by intentionally failing to comply with the Maryland Rules or orders of this Court or the hearing judge; (6) submission of false evidence, false statements, or other deceptive practices during the attorney discipline proceeding; (7) a refusal to acknowledge the misconduct's wrongful nature; (8) the victim's vulnerability; (9) substantial experience in the practice of law; (10) indifference to making restitution or rectifying the misconduct's

30

consequences; (11) illegal conduct, including that involving the use of controlled substances; and (12) likelihood of repetition of the misconduct.

*Att'y Grievance Comm'n v. Sperling*, 459 Md. 194, 275 (2018) (quoting *Att'y Grievance Comm'n v. McLaughlin*, 456 Md. 172, 204 (2017)). The hearing judge found that the Commission proved by clear and convincing evidence six aggravating factors: (1) dishonest or selfish motive; (2) a pattern of misconduct; (3) multiple offenses; (4) refusal to acknowledge the wrongful nature of the conduct; (5) substantial experience in the practice of law; and (6) indifference to making restitution. Mr. Whitted objects to each of these findings. The Commission excepts to the hearing judge's failure to find two additional aggravating factors: (1) submission of false evidence, false statements, or other deceptive practices during the attorney discipline proceeding; and (2) likelihood of repetition of the misconduct.

### 1. Mr. Whitted's Exception to the First Four Aggravating Factors

Mr. Whitted excepts to the findings of the first four aggravating factors, claiming that the hearing judge failed to distinguish between "asserting one's legal rights and engaging in multiple instances of misconduct with a selfish motive and indifference to the truth." He also contends that he was only "resorting to the legal process in an attempt to remedy the long-standing wrong that Ms. Jordan had inflicted upon him by denying him any access to and relationship with his three children." He further argues that he was not "attempting to avoid the payment of child support. Rather, Ms. Jordan effectively made it impractical if not impossible for Respondent to calculate the amount of support (including the children's medical bills) that was payable to Ms. Jordan at any specific point in time."

31

According to the hearing judge:

The Respondent displayed a selfish motive since his 2007 divorce from Lori Jordan. Most of his litigation appears to either be aimed at avoiding paying child support or outright retaliating against Ms. Jordan and those around her for attempting to enforce valid court orders against the Respondent. Additionally, the Court finds that the Respondent is obsessed on proving the righteousness of his causes, regardless of the opinions issued by various tribunals.

The Respondent has demonstrated a pattern of misconduct through his multitude of civil suits against Ms. Jordan in both state and federal court in both Georgia and Washington. The Respondent has repeatedly made claims not supported by facts and not sustainable by the law. The Respondent has made both repeated frivolous claims in violation of only asserting meritorious claims and contentions and has also made knowing misrepresentations to the Court in violation of WRPC 8.4([c]). The conduct by the Respondent was not a momentary lapse in judgment or a singular event but rather multiple offenses.

The Petitioner alleged that the Respondent utilized deceptive practices during the disciplinary process by relitigating his asserted positions with regard to the failure or improperly registering the Georgia divorce decree. This Court does not find deceptive practices. Instead, this Court finds that the Respondent steadfastly refuses to recognize the impropriety and wrongfulness of his conduct. His inability to recognize and accept any court's ruling inconsistent with his own interpretation of the law is supported by the argument set forth in his findings of facts as well as conclusions of law.

The Respondent's default position is that any adverse ruling is unlawful and any action by those either testifying or espousing the contrary position are falsify[ing] documents or misrepresenting the facts and law. The Court does not find that deception practices have been employed by the Respondent but does find by clear and convincing evidence that the Respondent refuses to acknowledge the wrongfulness of his conduct. It is clear from his filings, even in this case, that the Respondent does not believe that at any time he acted improperly or without justification. As such, this Court finds that the Petitioner has proven by clear and convincing evidence the aggravating factor of refusing to acknowledge the wrongfulness of his conduct but has not proven the utilization of deceptive practices during the disciplinary process.

32

The hearing judge's findings of a dishonest or selfish motive, pattern of misconduct, multiple offenses, and refusal to acknowledge the wrongful nature of the conduct, were all supported by clear and convincing evidence. Mr. Whitted's exceptions to those findings are overruled.

   2. ***Mr. Whitted's Exception to Hearing Judge's Finding of Indifference to Making Restitution***

Mr. Whitted also excepts to the hearing judge's finding that he is indifferent to making restitution. He supports his position by rehashing his claims against Ms. Jordan for the nonpayment of the money from her 401(k) plan.

The hearing judge found the existence of this aggravating factor because (1) despite advising the Commission that he was "ready and willing" to pay the child support owed, Mr. Whitted has made no payment to Ms. Jordan since October 2010; and (2) Mr. Whitted still owes Ms. Jordan over $292,000. The hearing judge did not "credit [Mr. Whitted's] assertion that he does not owe any child support at this time or that he made a lump sum payment of $55,000 back in 2009 or later."

Again, the hearing judge's finding was supported by clear and convincing evidence. Mr. Whitted was under multiple court orders requiring him to make monthly payments of child support and to make up for accumulated arrearages. For many years, Mr. Whitted made no payments voluntarily.[5] And notwithstanding his assertions that he was ready and able to satisfy the judgments against him, as of the oral argument before this Court, he has

---

[5] The $5,000 that Mr. Whitted's wife posted in bail to secure his release from jail was credited against his child support arrearages.

yet to make any such payments. The hearing judge's finding of indifference to making restitution was supported by clear and convincing evidence. Accordingly, we overrule this exception.

### 3. The Commission's Exception to the Hearing Judge's Failure to Find Submission of False Evidence, False Statements, or Other Deceptive Practices During the Attorney Discipline Proceeding

As reflected in the above passage from the hearing judge's findings, the hearing judge declined to find the aggravating factor of submission of false evidence, false statements, or other deceptive practices during the attorney discipline proceeding. The hearing judge reasoned that Mr. Whitted's attempts to relitigate the multiple adverse rulings in all the cases reflect an unwillingness to acknowledge the wrongfulness of his conduct rather than the submission of false evidence, false statements, or other deceptive practices.

The Commission excepts to the court's failure to find this factor. According to the Commission, Mr. Whitted "willfully disregarded the terms of his divorce decree, specifically the mandate to pay child support," and made misrepresentations to Judge Berns and the Commission about the $55,000 marital award. And then, according to the Commission, Mr. Whitted peddled the same misrepresentations in this disciplinary proceeding.

The Commission makes a fair point here. The hearing judge found, by clear and convincing evidence, that Mr. Whitted violated WRPC 8.4(c) by engaging "in conduct involving dishonesty, fraud, deceit, or misrepresentation." And we overruled Mr. Whitted's exception to that finding. The hearing judge based that finding on Mr. Whitted's

34

"knowing and intentional misrepresentations" to the Washington court on January 12, 2017, that he had agreed to apply Ms. Jordan's $55,000 obligation from her 401(k) plan against his child support obligations. The court found by clear and convincing evidence that when he made that representation, Mr. Whitted was trying to garnish Ms. Jordan's wages to collect on the $55,000 obligation, plus an additional $85,000 in claimed interest. The court added that at the evidentiary hearing, Mr. Whitted falsely testified that, in 2010, he had made a "lump sum payment, which [is] allowable by law in the State of Georgia, some $55,000." In other words, because he recycled the same misrepresentations in these proceedings, the same clear and convincing evidence that supports the WRPC 8.4(c) violation likewise supports the aggravating factor of false evidence, false statements, or other deceptive practices. We therefore sustain the Commission's exception to the hearing judge's failure to find this aggravating factor.[6]

### 4. The Commission's Exception to Failure to Find Likelihood of Repetition of the Misconduct

The Commission excepts to the hearing judge's failure to find "a likelihood of repetition" of Mr. Whitted's conduct. The Commission's proposed findings submitted after the hearing did not include a request for the hearing judge to find this aggravating factor. In any event, the hearing judge acknowledged that the likelihood of repetition of the misconduct is an aggravating factor to consider, and we assume that the hearing judge did

---

[6] Whether this aggravating factor moves the needle in our consideration of the appropriate sanction is another matter because the same underlying "conduct is already part of our consideration of an appropriate sanction[.]" *See, e.g.*, *Att'y Grievance Comm'n v. Maiden*, 480 Md. 1, 22 n.3 (2022).

consider it. *See Att'y Grievance Comm'n v. Jeter*, 365 Md. 279, 288 (2001) ("[W]e presume that trial judges know the law and correctly apply it."). The hearing judge was evidently not convinced by clear and convincing evidence that Mr. Whitted would engage in the misconduct in the future. And, as the record did not contain evidence of any ongoing litigation or future litigation between the parties, we cannot find that the hearing judge's failure to find this aggravating factor was clearly erroneous.

## IV

## SANCTION

This Court exercises original jurisdiction over attorney disciplinary proceedings. *Att'y Grievance Comm'n v. Clevenger*, 459 Md. 481, 489 (2018). Thus, it falls upon us to determine the appropriate sanction. In doing so, we are mindful that we sanction attorney misconduct to protect the public from those unfit to practice law, not to punish the attorney. *Att'y Grievance Comm'n v. Parris*, 482 Md. 574, 598 (2023); *Att'y Grievance Comm'n v. Karambelas*, 473 Md. 134, 176-77 (2021). We consider "the rules that were violated, the mental state of the attorney, the injuries, if any, inflicted by the attorney's misconduct, and the relevant aggravating and mitigating factors." *Att'y Grievance Comm'n v. Taniform*, 482 Md. 272, 316 (2022) (citing *Allenbaugh*, 450 Md. at 277).

The Commission urges this Court to disbar Mr. Whitted. According to the Commission:

> For 17 years, the Respondent has consistently disregarded court orders and rulings across various jurisdictions, from Georgia to Washington state, without consequence. Despite being an active member of this Court's Bar since 1995, [he] made knowing and intentional misrepresentations to [a] Washington court. Moreover, during these disciplinary proceedings, the

36

Respondent has persisted in advancing baseless arguments that are either legally barred by collateral estoppel or lack any foundation in law or fact.

(Footnote omitted).

In support of its position, the Commission cites *Attorney Grievance Commission v. Mixter*, 441 Md. 416 (2015), where we disbarred an attorney who filed frivolous motions; was deceitful; and made continual misrepresentations to courts, parties, and witnesses regarding both facts and the law. The Commission also cites *Attorney Grievance Commission v. Rheinstein*, 466 Md. 648 (2020), where we disbarred an attorney who made misrepresentations to the court to intimidate his opponents, made baseless and unsubstantiated claims, and attempted to disqualify every attorney retained by his opponents.

Not surprisingly, Mr. Whitted contends that no discipline is warranted.

Whether Mr. Whitted's conduct merits disbarment is a close call. Mr. Whitted fails to grasp the nature and extent of his misuse of the judicial system that persisted for over a decade in multiple forums. Mr. Whitted has engaged in a relentless pursuit of Ms. Jordan, Mr. Jordan, and Ms. Jordan's attorneys. Many times, he lost at the trial court level, lost on appeal, and then tried to relitigate the fully adjudicated issues in future proceedings. He has violated multiple court orders, including orders to pay child support and orders to pay sanctions. And he even attempted to relitigate the same matters in this disciplinary proceeding. Mr. Whitted's conduct shows a disdain for the judicial system. The Commission's request for disbarment is reasonable.

We note, however, that Mr. Whitted's conduct, though egregious and harmful, was cabined to his pro se representations. There is no suggestion of misconduct by Mr. Whitted in any professional capacity. That fact, combined with the lack of any prior discipline and his character and reputation, leads us to conclude that although Mr. Whitted should be sidelined, a sanction short of disbarment is warranted. Accordingly, effective immediately, Mr. Whitted is suspended indefinitely from the practice of law in Maryland.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 19-709(d), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST STEPHEN E. WHITTED.**